**Exhibit B**

**Declaration of James Murphy**

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# FRANKFORT DIVISION

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES ENVIRONMENTAL )<br>PROTECTION AGENCY, *et al.*, )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>KENTUCKY RESOURCES COUNCIL, )<br>INC., *et al.*, )<br>)<br>Applicant-Intervenor-Defendants. )<br>) | No. 3:23-cv-00007-GFVT<br>(consolidated with No.<br>3:23-cv-00008-GFVT) |

## DECLARATION OF JAMES MURPHY

I, James Murphy, declare as follows:

1. I am over the age of eighteen and competent to make this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I joined the National Wildlife Federation ("NWF") in 2003, first serving as Wetlands and Water Resources Counsel, then Senior Counsel. I currently serve as NWF's Director of Legal Advocacy in NWF's National Advocacy Center in Washington, D.C. In this capacity, I coordinate litigation and legal advocacy for NWF's national policy programs, with a major focus on clean water and on encouraging congressional, administrative, and legal actions to protect wetlands and water resources for the benefit of both human and wildlife populations.

3. I have been deeply engaged in advocating for a broad interpretation of the Clean Water Act consistent with congressional intent for approximately twenty years. In this capacity, I have led NWF's advocacy efforts in support of the recently finalized "Revised Definition of 'Waters of the United States'" ("2023 Rule") to restore the longstanding federal clean water protections as updated to reflect Supreme Court precedent, agency experience and expertise, and the best available science.

4. NWF is the nation's largest member-supported nonprofit conservation advocacy and education organization. NWF has more than six million members and supporters nationwide and affiliate organizations in 52 states and territories. NWF's membership is made up of conservation-minded hunters, anglers, and other outdoor enthusiasts. NWF members enjoy the outdoors and the nation's waters across the country. For example, they hunt ducks that depend on the prairie pothole region, fish in the headwater trout streams of the Appalachian Mountains, and canoe on waters that are fed by the small streams of New England.

5. NWF is headquartered in Reston, Virginia, with regional offices throughout the United States, including in California, Colorado, Georgia, Louisiana, Michigan, Montana, Texas, Washington, and Vermont. Staff in each of NWF's regional offices works on regional issues. For example, the staff in NWF's Rocky Mountain Regional Center work across Arizona, Colorado, Nebraska, Nevada, New Mexico, and Wyoming; the staff in NWF's Mid-Atlantic Regional Center work across Delaware, Kentucky, North Carolina, Maryland, Pennsylvania, Tennessee, Virginia, and West Virginia.

6. The mission of NWF is to unite all Americans to ensure wildlife thrive in a rapidly changing world. NWF achieves this mission by educating, mobilizing, and advocating to preserve and strengthen protections for wildlife and wild places. A major concern of NWF is the

protection of water resources, such as headwater streams, wetlands, rivers, and interstate waters. NWF has been advocating for the protection of these vital resources, upon which wildlife depends, since its founding in 1936.

7. NWF coordinates the Water Protection Network to help hundreds of organizations and community leaders understand and influence U.S. Army Corps of Engineers projects and federal water policy in order to ensure that water projects and policies are both economically and environmentally sound.

8. NWF has actively worked on behalf of its members to ensure protection of wetlands, streams, and other water resources, including the fish and wildlife that rely on them. Among its activities relating to wetlands, NWF has defended the applicability of the Clean Water Act to activities involving the dredging of wetlands; submitted comments and other documents to improve and enforce mitigation requirements where impacts to wetlands cannot be avoided; advised citizens, including NWF's members, on procedures for becoming involved in wetlands permit challenges; and prepared citizens' guides to the Section 404 permitting process.

9. Because protecting water resources is fundamental to NWF's mission, NWF worked on behalf of its members and affiliates to secure the 2023 Rule and to advocate for strong federal protections for vital waters, including headwater streams, categorical protections for tributaries and adjacent wetlands, protections for other wetlands like prairie potholes and Carolina bays, and interstate waters.

10. Although the 2023 Rule does not go as far as NWF advocated for, it restores the longstanding definition of "waters of United States" that predated the 2015 Clean Water Rule, with additional clarity and limitations to reflect the agencies' interpretation of Supreme Court precedent, agency expertise and experience, and best available science. Importantly, it restores

longstanding clean water protections to streams, wetlands, and other waters and formally replaces the "Navigable Waters Protection Rule."

11. The prior presidential administration's definition of "waters of the United States" in the "Navigable Waters Protection Rule" effected a significant rollback of clean water protections for streams, wetlands and interstate waters, risking the loss of protections for over sixty percent of the nation's stream miles and tens of millions of acres of wetlands. This reduction of protections was unprecedented in the history of the Clean Water Act, and it upended almost 50 years of successful bipartisan practice and federal–state partnerships for point source pollution control, drinking water source water protection, oil spill prevention and cleanup, watershed cleanup planning, and large-scale aquatic resource restoration projects. The rollbacks also threatened the drinking water sources for over 200 million people in the United States and threatened the interests of NWF and its members.

12. NWF's intensive work on the scope of Clean Water Act protections spans the two decades since the decision in *Solid Waste Agency of Northern Cook County (SWANCC) v. United States*, 531 U.S. 159 (2001). Our work on this issue has included, but is not limited to, the following: NWF co-produced and publicly distributed three major reports focusing on the heightened risk to wetlands and water resources following the Supreme Court decisions in *SWANCC* and *Rapanos v. United States*, 547 U.S. 715 (2006), and the 2003 and 2008 guidance documents that EPA and the Army Corps of Engineers adopted in the wake of those decisions; conducted scores of presentations and roundtables around the country to inform the public of the need to restore Clean Water Act protections to vulnerable wetlands and streams; participated in, and contributed scientific input to, the EPA Office of Research and Development's science report, *Connectivity of Streams and Wetlands to Downstream Waters: A Review and Synthesis of*

4

*the Scientific Evidence*, and the formal EPA Science Advisory Board review of the report, which provides a portion of the scientific support for the 2023 Rule; submitted extensive written comments to EPA and the Corps supporting reforms to the 2003 and 2008 guidance documents; supported a strong 2015 Clean Water Rule during the rulemaking process; opposed actions to delay the effective date of the 2015 Clean Water Rule; submitted organizational comments and encouraged our members, supporters, and state affiliates to submit more than 96,500 total individual and organizational comments supporting the 2015 Clean Water Rule and opposing the 2019 repeal of the Clean Water Rule and the 2020 adoption of the "Navigable Waters Protection Rule"; advocated for the restoration of longstanding federal clean water protections during the 2023 Rule rulemaking process, including submitting comments to EPA and the Corps on their proposed rule; and regularly reported to NWF members on NWF's efforts to ensure that Clean Water Act protections are asserted and maintained for water resources to the full extent required by law.

13.     In addition, NWF works on projects to restore and protect rivers, bays, wetlands, and watersheds across the country. For example, in 2010, NWF helped launch the Choose Clean Water Coalition to advocate for restoring thousands of streams and rivers flowing to the Chesapeake Bay; NWF remains a member of the coalition, which continues its advocacy to this day. NWF does similar advocacy work and on-the-ground restoration in the upper Great Lakes, especially Michigan's Upper Peninsula, northern Wisconsin, and the arrowhead region of northern Minnesota; the Everglades; the Mississippi River Delta; and Gulf of Mexico. These and other waters have become degraded by pollution, flow alterations, and wetland and stream destruction. The prior administration's previously vacated "Navigable Waters Protection Rule" directly hindered these restoration efforts because it removed protections from small streams and

wetlands, rejecting a science-based approach to asserting Clean Water Act jurisdiction. And the currently applicable pre-2015 regime, although similar to the 2023 Rule, failed to provide sufficient guidance necessary for the agencies and regulated community to apply in identifying jurisdictional waters.

14. The upper Great Lakes; the Everglades; the Mississippi River Delta; Gulf of Mexico and other great waters simply cannot be protected without also protecting the many small streams and wetlands that significantly affect their chemical, physical, and biological integrity, like occurs more clearly under the 2023 Rule. Thankfully, the 2023 Rule provides more clarity and guidance, including but not limited to a list of the critical factors and functions (such as contribution of flow, filtering of pollutants, flood retention, provision of aquatic habitat, distance) these types of waters often provide to be considered as part of the Army Corps' jurisdictional analysis.

15. I understand that the parties challenging the 2023 Rule are asking this Court to vacate the rule and to limit the protections for clean water that the rule provides. I also understand that the parties in the case argue that the 2023 Rule is inconsistent with Supreme Court precedent and exceeds the agencies' authority under the Clean Water Act and the U.S. Constitution. I disagree with these arguments, but if plaintiffs were to prevail on any of these arguments, it could make it difficult, if not impossible, for the agencies to protect headwater streams, tributaries, wetlands, interstate waters, and other waterways that are critical to fish and other wildlife, NWF's mission, and NWF's members. For example, the majority of tributaries (even rivers) in the arid west, headwater and small streams, wetlands, and other important waters would be left vulnerable if the court were to adopt plaintiffs' restrictive view of the relatively

permanent standard. This would cause widespread destruction and degradation of those critically important waters themselves, and deleterious effects far downstream.

16. The destruction of waters that could be permitted to occur if the parties challenging the 2023 Rule prevail on their arguments would force NWF to increase its advocacy and restoration efforts, including advocating before Congress and state legislatures; advocating before local, state, and federal agencies; building support at the local government level for new local water protections; and engaging in litigation challenging permits and potentially damaging projects. These efforts would divert resources from NWF's other important projects, such addressing the threats posed by invasive species and the warming climate, promoting wildlife conservation, and working with farmers on resilient farming practices.

17. NWF has numerous active members who have taken action to support a strong Clean Water Act and strong federal protections for our nation's waters. These members use and enjoy streams, wetlands, and other water bodies—such as the wetlands in the prairie pothole region, headwater trout streams of the Appalachian Mountains, and small streams of New England—that will be at risk of pollution, destruction, or degradation if this Court issues an order limiting the clean water protections provided by the 2023 Rule.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on February 28, 2023

_Jim Murphy_
National Wildlife Federation

7