UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES ENVIRONMENTAL )<br>PROTECTION AGENCY, *et al.*, )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>KENTUCKY RESOURCES COUNCIL, )<br>INC., *et al.*, )<br>)<br>Applicant-Intervenor-Defendants. )<br>) | No. 3:23-cv-00007-GFVT<br>(consolidated with No.<br>3:23-cv-00008-GFVT) |

### CONSERVATION GROUPS' REPLY IN SUPPORT OF MOTION
### TO INTERVENE AS DEFENDANTS

Plaintiffs do not dispute that the Conservation Groups meet all but one of the elements required for intervention of right: the Conservation Groups' motion to intervene is timely; they have a substantial legal interest in this case; and their interests would be impaired by an adverse ruling. *See generally* Private-Sector Plaintiffs' ("Chamber") Opp. to Mot. to Intervene, ECF 28; Ky. Opp. to Mot. To Intervene, ECF 30.[1] Plaintiffs instead claim only that the U.S. Environmental Protection Agency and U.S. Army Corps of Engineers (collectively, the "Agencies") adequately represent the Conservation Groups' interests in the case and that

---

[1] Kentucky filed a separate brief indicating that it "agrees with the opposition filed by the Private-Sector Plaintiffs and adopts the arguments therein as its own." Ky. Opp'n to Mot. to Intervene 1–2, ECF 30. In this reply, the Conservation Groups therefore attribute arguments in the Chamber Opposition to Motion to Intervene, ECF 28, to all Plaintiffs.

allowing intervention would interfere with the expedited briefing schedule. *See* Chamber Opposition at 2, ECF 28. Neither claim is true; further, Plaintiffs' concerns about sustaining an expedited schedule are of their own making and no reason to deny the Conservation Groups intervention. Because the Conservation Groups readily satisfy each requirement to intervene as of right, the Court should grant their motion so that the Conservation Groups have an opportunity to be heard on motions that seek to enjoin the implementation of the "Revised Definition of 'Waters of the United States,'" 88 Fed. Reg. 3004 (Jan. 18, 2023) ("Rule"), indefinitely. At a minimum, the Court should grant permissive intervention.

### A. The Agencies do not adequately represent the Conservation Groups' interests.

The burden of showing inadequacy of representation is "minimal." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). "[P]roposed intervenors need show only that there is a *potential* for inadequate representation." *Grutter*, 188 F.3d at 400 (emphasis in original). And the "presumption of adequate representation" that "arises when a putative intervenor 'share[s] the same ultimate objective as a party to the suit,'" *Truesdell v. Meier*, No. 3:19-CV-00066-GFVT, 2020 WL 1991402, at *4 (E.D. Ky. Apr. 27, 2020), does *not* apply when the respective interests are "at least . . . different.'" *Id.* (quoting *Reliastar Life Ins. Co. v. MKP Investments*, 565 F. App'x 369, 374 (6th Cir. 2014)). Here, the Conservation Groups have demonstrated that their interests are different than those of the Agencies in several ways, easily overcoming any presumption of adequate representation.

*First,* even though the Conservation Groups will also urge the Court to uphold the Rule, their arguments will likely differ substantively from the arguments made by the Agencies. For example, the Conservation Groups desire a broader definition of "waters of the United States"

(*see, e.g.*, Jim Murphy Decl., ECF 22-2 ("[T]he 2023 Rule does not go as far as NWF advocated for. . . ."); Mot. to Intervene at 17, ECF 22), and believe the Agencies "could have done much more to protect the nation's waters, given the scope of their Commerce Clause authority." Conservation Groups' Proposed Resp. Br. at 1, ECF 32–2. In contrast, the Agencies argue in this case that the Rule "is the best reading of the [Clean Water Act]." U.S. Resp. Br. at 21, ECF 31.

Because the Conservation Groups will almost certainly offer additional arguments that differ from those made by the Agencies, the Agencies do not adequately represent the Conservation Groups' interests in this case. *Grutter*, 188 F.3d at 400 ("It may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments.") (quoting *Michigan State AFL-CIO*, 103 F.3d at 1247); *Truesdell*, 2020 WL 1991402, at * 4. Indeed, Kentucky made this very argument when successfully moving to intervene to defend the prior administration's now-invalidated definition of "waters of the United States" ("2020 Rule"). Mot. to Intervene as Defs. at 8, *California v. Wheeler*, 3:20-cv-03005-RS (N.D. Cal. June 1, 2020), ECF 107 ("The defendants—officials and agencies of the federal government—will not adequately represent the State Intervenors' interests, either. Although the defendants will also urge the Court to reject the Complaint, their rationale could differ substantively from the bases the State Intervenors intend to advance."); *id.*, Order Granting Mot. to Intervene (June 10, 2020), ECF 160.

***Second,*** the Conservation Groups represent a different aspect of the public interest than the Agencies. The Agencies argue the Rule is in the public interest because "[r]egulated parties as well as regulators (including Kentucky) will benefit from the added clarity that the Rule provides." U.S. Resp. Br. at 47, ECF 31. The Agencies do not address how the Rule is in the public interest in relation to entities like the Conservation Groups and their members.

3

The Conservation Groups submitted fifteen declarations showing their members' interests in and reliance on clean water for their recreation, enjoyment, and livelihoods. *See* Int.-Def. Decls., ECF 22-1 – ECF 22-15. The Conservation Groups have explained how the Rule protects streams, wetlands, and other waters that might otherwise be left vulnerable due to under-enforcement or lack of guidance should the Rule be vacated. *See id.*; Mot. to Intervene at 14–15, ECF 22. Unlike the Agencies, which are charged with representing the diverse and often conflicting interests of the general public—including the Plaintiffs here—the Conservation Groups are dedicated to protecting the distinct recreational, aesthetic, and conservation interests of their members, and these distinct interests deserve a place in this litigation.

Courts have routinely recognized, including in the context of rulemaking to define "waters of the United States," that federal agencies are unlikely to adequately represent the interests of a subset of citizens. *See Env't Integrity Project v. Wheeler*, No. 20-CV-1734 (KBJ), 2021 WL 6844257, at *3 (D.D.C. Jan. 27, 2021) (Jackson, J.) ("Here, although the interests of the Business Entities and the Federal Defendants are generally aligned—insofar as they both argue that the current rule is lawful—the Federal Defendants necessarily have a more complex range of interests and concerns, given that they must represent the broader public when promulgating and defending rules."); Mot. to Intervene at 16, ECF 22 (collecting cases). In fact, when moving to intervene to defend the 2020 Rule, the U.S. Chamber of Commerce argued the same. Proposed Business Intervenors' Unopposed Mot. to Intervene at 18, *South Carolina Coastal Conservation League v. Wheeler et al.,* 2:20-cv-01687-DCN (D.S.C. May 28, 2020), ECF 22 ("[T]he Fourth Circuit has held that a district court abused its discretion to deny intervention where a government agency, tasked with 'represent[ing] all of the citizens of the state,' did not adequately represent the more specific interests of a nonprofit organization that

4

represented 'a subset of citizens.'") (alteration in original) (citing *In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991)).

The interests of the Conservation Groups and their members specifically deserve to be heard on motions that seek to enjoin the implementation of the Rule indefinitely. Plaintiffs make the odd argument that the Conservation Groups should move to intervene later, but the Conservation Groups' valid interests in securing the benefits of the Rule are pressing now because they would be adversely affected by the injunction Plaintiffs seek, as shown in their declarations and proposed opposition to Plaintiffs' motions for preliminary injunction. Moreover, Plaintiffs' argument is contrary to the basic concept of the intervention requirements, which call for timely intervention early in a case to avoid disrupting it midstream—exactly the prompt intervention the Conservation Groups request here.

There is also a risk that a change in presidential administration or policy could occur, diminishing the Agencies resolve to defend the merits of the Rule—just like in the challenges to the Obama administration's 2015 Clean Water Rule in the Southern District of Texas and the Southern District of Georgia. In both cases, the Agencies ultimately took no position regarding the merits of the 2015 Rule due to their contemporaneous rulemaking to repeal that rule under the Trump administration. That left only intervenor-environmental organizations to defend the merits of the rule at summary judgment. *See* Opp'n to Summ. J., *Texas v. EPA*, No. 3:15-cv-162 (S.D. Tex. Nov. 8, 2018), ECF 170; Opp'n to Summ. J., *Georgia v. Wheeler*, No. 2:15-cv-0079 (S.D. Ga. Oct. 10, 2018), ECF 215. Despite dismissing this concern in its response, the Chamber successfully made this same argument in motions to intervene as a defendant in support of the 2020 Rule. *See, e.g.,* Proposed Business Intervenors' Mot. to Intervene at 19, *South Carolina Coastal Conservation League v. Wheeler*, 2:20-cv-01687 (D.S.C. May 28, 2020), ECF 22 ("In

5

addition, there is a risk that a change in Administration or policy could undermine the agencies' resolve to defend the merits of the 2020 Rule—exactly what happened in litigation regarding the 2015 Rule before the Southern District of Georgia and the Southern District of Texas."); *id.*, Order Granting Mot. to Intervene, ECF 29.

The Agencies themselves, who are in the best position to say whether they adequately represent the Conservation Groups' interests, do not oppose the Conservation Groups' permissive intervention. Because the Agencies do not adequately represent the Conservation Groups' interests in this litigation, the Court should grant the Conservation Groups' motion to intervene.

### B. Plaintiffs' concerns about the expedited briefing schedule are of their own making and are not adequate reasons to deny intervention.

Plaintiffs argue that "[t]he fast-moving nature of the current proceedings" weighs against allowing intervention because requiring plaintiffs to respond to additional briefing on this time frame would be "needlessly burdensome." Chamber Br. at 4, ECF 28. But Plaintiffs cannot reasonably complain about the burdens of a briefing schedule that their own actions (and inaction) necessitated.

The Agencies announced the Final Rule on December 30, 2022. U.S. EPA, News Release: EPA and Army Finalize Rule Establishing Definition of WOTUS and Restoring Fundamental Water Protections (Dec. 30, 2022), https://perma.cc/46XY-88ZT. The Agencies made the text of the Rule and associated fact sheets available to the public on that date, and also announced that the Rule would take effect 60 days after publication in the Federal Register. U.S. EPA & U.S. Army Corps of Eng'rs, "Revised Definition of 'Waters of the United States,'" Pre-Publication Final Rule (Dec. 30, 2022) (attached as Ex. A). The Rule was then published in the Federal Register on January 18, 2023. 88 Fed. Reg. at 3004. Plaintiffs were on notice of every

word of the final Rule as early as December 30. Yet they waited more than two months after that date, and more than a month after the Rule's publication in the Federal Register, to file this lawsuit. Only then did Kentucky, in an "Emergency" motion (ECF 08), seek expedited briefing in an attempt to obtain consideration of Plaintiffs' motions prior to the Rule's effective date. Any purported "burden[]" on Plaintiffs (Chamber Opp'n 4) was self-inflicted.

On the other hand, the Conservation Groups filed their motion to intervene a mere eight days after Kentucky filed its Complaint. *See* Ky. Complaint, ECF 1. And despite the expedited schedule, the Conservation Groups filed their proposed 25-page response to Plaintiffs' two motions for preliminary injunction by the deadline set by the Court. Conservation Groups' Proposed Response Br. at 1, ECF 32–2. The Conservation Groups have not requested any extensions of time and submit this reply promptly.[2] Plaintiffs' concerns about the effect of intervention on the case schedule are unfounded and their protests that intervention would require them to respond to additional briefing on an expedited schedule, *which they requested*, represent an inadequate reason on which to deny intervention.

> **C.    In challenges to "waters of the United States" rules, courts have allowed more than one hundred organizations and states (including Plaintiffs) to intervene in support of the Agencies, even where the proposed intervenors—along with the Agencies—sought to uphold the rule.**

Very recently, when industry groups and states challenged the Rule, the Southern District of Texas granted intervention to the Bayou City Waterkeeper in support of the Agencies. Order Granting Mot. to Intervene, *Texas v. U.S. Envtl. Prot. Agency*, No. 3:23-cv-00017 (S.D. Tex. Feb. 14, 2023), ECF No. 20. The Southern District of Texas's decision is consistent with the practice of many courts in challenges to the Agencies "waters of the United States" rules through

---

[2] Given the upcoming hearing on Plaintiffs' motions, the Conservation Groups renew their request for expedited review of their Motion to Intervene and request to be heard on the motions for preliminary injunction at the hearing.

7

the years. This Court should similarly grant the Conservation Groups intervention so they can represent their specific interests in upholding the Rule's protections for waters that are important to their organizations and their members.

When parties challenged the 2015 rule defining "waters of the United States," courts—including the Sixth Circuit—granted intervention to more than two dozen conservation organizations and states in support of the Agencies, despite each of those parties seeking the same ultimate outcome: a decision upholding the 2015 rule. *See In re: Envtl. Prot. Agency and Dept. of Defense, Final Rule: Clean Water Rule: Definition of "Waters of the United States,"* No. 15-3799 (6th Cir.) (granting motions to intervene by National Wildlife Federation and 18 other conservation organizations and by 7 states and District of Columbia); *North Dakota v. EPA*, No. 3:15-cv-59 (D.N.D.) (permitting conservation organization to intervene); *Ohio v. EPA*, 2:15-cv-2467 (S.D. Ohio) (permitting two conservation organizations, including National Wildlife Federation, to intervene); *Texas v. EPA*, No. 3:15-cv-162 (S.D. Tex.) (permitting two conservation organizations, including National Wildlife Federation, to intervene); *Georgia v. McCarthy*, No. 2:15-cv-79 (S.D. Ga.) (permitting four conservation organizations, including National Wildlife Federation, to intervene); *Am. Farm Bureau Fed'n v. EPA*, No. 3:15-cv-165 (S.D. Tex.) (permitting two conservation organizations, including National Wildlife Federation, to intervene).

Similarly, when parties challenged the 2020 rule defining "waters of the United States," courts granted intervention to more than eighty defendants—including Plaintiffs here, the U.S. Chamber of Commerce (in at least three cases) and Kentucky—despite each of those intervenors seeking the same ultimate outcome as the Agencies: a decision upholding the 2020 rule. *See Colorado v. U.S. EPA*, 1:20-cv-1461-WJM-NRN (D. Colo.) (permitting 16 organizations,

8

including the U.S. Chamber of Commerce, to intervene); *California v. Wheeler*, 3:20-cv-03005-RS (N.D. Cal.) (permitting 26 states, including Kentucky, to intervene); *South Carolina Coastal Conservation League et al v. Wheeler et al.,* 2:20-cv-01687-DCN (D.S.C.) (permitting 19 organizations, including U.S. Chamber of Commerce, to intervene); *Environmental Integrity Project v. Wheeler*, 1:20-cv-01734-KBJ (D.D.C.) (permitting 15 organizations, including U.S. Chamber of Commerce, to intervene); *Puget Soundkeeper Alliance v U.S. EPA*, 2:20-cv-00950-JCC (W.D. Wash.) (permitting five organizations to intervene); *Conservation Law Foundation v. U.S. EPA*, 1:20-cv-10820-DPW (D. Mass.) (permitting two individuals to intervene); *Waterkeeper Alliance v. Wheeler*, 3:18-cv-03521 (N.D. Cal.) (permitting two individuals to intervene).

Notably, both the U.S. Chamber of Commerce and Kentucky sought and were granted intervention in support of the Agencies at the preliminary injunction stage—just as the Conservation Groups seek here.

\*     \*     \*

Consistent with Sixth Circuit precedent, close calls should be decided in favor of intervention. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) ("Rule 24 should be 'broadly construed in favor of potential intervenors.'") (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir.1991)). This is not a close call. The Agencies do not adequately represent the Conservation Groups' interests. Plaintiffs' concerns over an expedited briefing schedule are both unfounded and inadequate to bar the Conservation Groups' intervention. The Conservation Groups readily satisfy each requirement for either intervention as of right or permissive intervention.

9

Respectfully submitted this 5th day of March, 2023.

/s/ *Mark Sabath*
Mark Sabath*
Southern Environmental Law Center
122 C Street NW, Suite 325
Washington, DC 20001
(434) 977-4090
msabath@selcva.org

Kelly F. Moser*
Nicholas S. Torrey*
Southern Environmental Law Center
601 West Rosemary Street, Suite 220
Chapel Hill, NC 27516
(919) 967-1450
kmoser@selcnc.org
ntorrey@selcnc.org

Megan Hinkle Huynh*
Southern Environmental Law Center
Ten 10th Street NW, Suite 1050
Atlanta, GA 30309
(404) 521-9900
mhuynh@selcga.org

*Counsel for the Conservation Groups*
*\*Pro hac vice application pending*

/s/ *Ashley Wilmes*
Ashley Wilmes
Tom FitzGerald
Kentucky Resources Council, Inc.
PO Box 1070
Frankfort, Kentucky 40602
(502) 875-2428
ashley@kyrc.org
fitzkrc@aol.com

*Counsel for Kentucky Resources Council, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2023, I electronically filed the foregoing Reply in Support of Motion to Intervene as Defendants with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all counsel of record.

/s/ Ashley Wilmes