UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION
CIVIL ACTION NO. 3:23-cv-00007-GFVT (lead case,
consolidated with No. 3:23-cv-00008-GFVT)

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY; <br> KENTUCKY CHAMBER OF COMMERCE; <br> CHAMBER OF COMMERCE OF THE <br> UNITED STATES OF AMERICA; <br> ASSOCIATED GENERAL CONTRACTORS OF <br> KENTUCKY, INC.; <br> HOME BUILDERS ASSOCIATION OF KENTUCKY; <br> PORTLAND CEMENT ASSOCIATION; and <br> GEORGIA CHAMBER OF COMMERCE, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION <br> AGENCY, ET AL., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PRIVATE-SECTOR PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION**

**EXHIBIT 1**

**U.S. EPA and Department of the Army,** *Economic Analysis for the Final "Revised Definition of 'Waters of the United States'" Rule* **(Dec. 2022) - Excerpt**





# Economic Analysis for the Final "Revised Definition of 'Waters of the United States'" Rule

U.S. Environmental Protection Agency

and

Department of the Army

December 2022



# Table of Contents

**Table of Contents** .................................................................................................................. ii

**List of Tables** ........................................................................................................................ v

**List of Figures** ..................................................................................................................... vii

**Abbreviations** ..................................................................................................................... viii

**Executive Summary** ............................................................................................................ xi

**I.    Introduction and Overview** ........................................................................................ 1

I.A    Overview of Economic Analysis ................................................................................. 2

I.B    Summary of the Final Changes in Clean Water Act Jurisdiction Relative to the Secondary Baseline
 ...................................................................................................................................... 4

    I.B.1  The Pre-2015 Regulatory Regime Baseline .................................................... 4

    I.B.2  The 2020 NWPR Baseline ............................................................................... 6

    I.B.3  The Final Rule and How It Compares to Prior Regimes ................................. 9

    I.B.4  Comparison of the Scope of Jurisdiction: Primary Baseline and Final Rule .. 36

    I.B.5  Comparison of Scope of Jurisdiction: Secondary Baseline and Final Rule ... 37

I.C    Assessing the Change in Scope of Jurisdiction with the Cowardin Classification ....... 38

    I.C.1  Prior Methods for Assessing Change in Scope ............................................. 38

    I.C.2  Assessing Change in Scope between Pre-2015 Practice and the 2020 NWPR ...... 39

I.D    Economic Analysis of the Final Rule using the Primary Baseline ............................. 39

    I.D.1  Unfunded Mandate Reform Act ..................................................................... 39

    I.D.2  Executive Order 12898 Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations ............................................ 40

    I.D.3  Executive Orders 12866 Regulatory Planning and Review and 13563 Improving Regulation and Regulatory Review ............................................................. 40

    I.D.4  Regulatory Flexibility Act and Small Business Regulatory Enforcement Fairness Act ........ 40

I.E    I.E. Summary ................................................................................................................ 42

**II.   State and Tribal Regulatory Practice** ....................................................................... 44

II.A   "Waters of the State" ................................................................................................. 46

II.B   State Regulatory Practice ........................................................................................... 46

    II.B.1 Regulation of Dredge and Fill Material ......................................................... 47

    II.B.2 Surface Water Discharge Permitting ............................................................. 48

II.C   Incorporation of State Regulations in Economic Analysis .......................................... 49

**III.     Analysis of the Impacts of Clean Water Act Jurisdictional Changes from the Secondary Baseline (2020 NWPR) to Final Rule** .......................................................................................... **51**

III.A   Clean Water Act Section 311: Oil Spill Prevention, Preparedness, Reporting and Response ......... 51

    III.A.1   Spill Prevention and Preparedness ................................................................................. 52

    III.A.2   Spill Notification and Removal ...................................................................................... 57

    III.A.3   Uncertainty and Limitations for Assessing Potential Effects on Clean Water Act Section 311 Program ...................................................................................................................... 59

III.B   Clean Water Act Section 402: National Pollutant Discharge Elimination System (NPDES) .......... 60

    III.B.1   Potential Impacts on Individual NPDES Permits ............................................................ 62

    III.B.2   Potential Impacts on General Permits ............................................................................. 63

    III.B.3   Potential Impacts on Section 402 State Programs .......................................................... 66

    III.B.4   Uncertainty and Limitations for Assessing Potential Effects on Clean Water Act Section 402 Program ...................................................................................................................... 67

III.C   Clean Water Act Section 404: Discharge of Dredged or Fill Material............................................ 67

    III.C.1   Potential Effects of the Final Rule on the Clean Water Act Section 404 Program ........... 70

    III.C.2   Quantitative Assessment of Potential National Impacts .................................................. 72

    III.C.3   Uncertainty and Limitations for Assessing Potential Effects on Clean Water Act Section 404 Program ...................................................................................................................... 90

III.D   Other Clean Water Act Sections ..................................................................................................... 94

    III.D.1   Clean Water Act Section 303: Water Quality Standards and Total Maximum Daily Loads 94

    III.D.2   Clean Water Act Section 401: State and Tribal Roles ..................................................... 95

**IV.    Environmental Justice Analysis** ........................................................................................... **96**

IV.A   Screening Analysis of the Final Rule using the Secondary Baseline of the 2020 NWPR ............... 96

IV.B   Uncertainty and Limitations .......................................................................................................... 113

**V.     Tribal Impact Analysis** ........................................................................................................ **114**

**VI.    Sector Impact Analysis** ........................................................................................................ **119**

**VII.   References** ............................................................................................................................. **123**

**Appendix A   Using Cowardin Classification to Assess Change in Jurisdictional Scope** ............... **130**

**Appendix B   Methodology for Generating Benefit-Transfer Predictions based on Wetland Meta-Analysis** **134**

B.1.   Meta-data ...................................................................................................................................... 135

B.2.   Regression Results ........................................................................................................................ 137

B.3.   WTP prediction ............................................................................................................................. 142

*Table of Contents*

**Appendix C**    **Final Rule Analysis: State-level Results**.................................................................................. 152

**Appendix D**    **Sensitivity Analysis of National Benefits**........................................................................ 167

**Appendix E**    **Mapped NHD Stream Mileage and NWI Wetland Acreage by State** ...................... 178

**Appendix F**    **Environmental Justice Analysis State-level Results** ................................................... 183

**Appendix G**    **Sector Impact Analysis State-level Results**................................................................. 194

**Appendix H**    **Alternative Permit Cost Estimates using Sunding and Zilberman (2002) Values** .. 212

be considered jurisdictional paragraph (a)(5) waters. To illustrate, a relatively permanent lake located near a tributary that meets the relatively permanent standard, but separated by a natural berm, to the extent that berm provides evidence of a continuous surface connection, is jurisdictional as a paragraph (a)(5) water under the relatively permanent standard. Similarly, a relatively permanent oxbow pond located near a traditional navigable water, and connected to that traditional navigable water via a swale that provides a continuous surface connection between the pond and the traditional navigable water, is jurisdictional as a paragraph (a)(5) water under the relatively permanent standard. Wetlands with similar characteristics are considered for jurisdiction under the final rule as adjacent wetlands. When an intrastate lake, pond, stream or wetland that does not meet the jurisdictional criteria under other categories of the final rule does not have a continuous surface connection, regardless of flow regime, it would be assessed as a paragraph (a)(5) water via a significant nexus analysis. Some waters could be considered jurisdictional under paragraph (a)(5) where they significantly affect the chemical, physical, or biological integrity of traditional navigable waters, the territorial seas, or interstate waters, though the agencies anticipate that more resources will likely be found jurisdictional under paragraph (a)(5) pursuant to the relatively permanent standard.

### I.B.3.6.2   Comparison of the Final Rule to the Primary Baseline

The agencies final rule makes changes to the jurisdictional criteria considered for intrastate waters evaluated under paragraph (a)(5) of the final rule as compared to the jurisdictional criteria intrastate waters evaluated under the comparable paragraph (a)(3) of the 1986 regulations, which is utilized under pre-2015 practice. This rule replaces the interstate commerce test used in paragraph (a)(3) of the 1986 regulations with the relatively permanent standard and the significant nexus standard for the comparable paragraph (a)(5) category in this rule. Prior to the *SWANCC* decision, paragraph (a)(3) of the 1986 regulations provided a broad scope of jurisdiction for waters considered under that category. However, after the *SWANCC* decision, as discussed in Section I.B.1, in practice the agencies have not asserted jurisdiction over waters assessed under paragraph (a)(3) of the 1986 regulations. Compared to the straight regulatory text of paragraph (a)(3) of the 1986 regulations, the final rule's analogous paragraph (a)(5) category represents a decrease in jurisdiction for waters considered under that category. However, there will likely be waters that are jurisdictional under paragraph (a)(5) of the final rule that in practice would not have been jurisdictional under the comparable paragraph (a)(3) category of the 1986 regulations as implemented consistent with the pre-2015 regulatory regime. This includes waters evaluated under paragraph (a)(5) pursuant to the relatively permanent standard, as discussed in Section I.B.3.6(1), and waters evaluated under paragraph (a)(5) pursuant to the significant nexus standard. Similar to pre-2015 practice, waters evaluated under paragraph (a)(5) pursuant to the significant nexus standard will generally be considered individually. When considered individually, there are likely few of these resources that would feasibly be found to have a significant nexus. For example, there would be a higher likelihood for the water to be jurisdictional as an (a)(5) water if it were substantially large, and/or in close proximity to the nearest traditional navigable waters, territorial seas, or interstate waters ("paragraph (a)(1) waters").

For example, when looking at data associated with JDs carried out under the *Rapanos* Guidance utilized consistent with pre-2015 practice (including AJDs, PJDs and JD Concurrences), the proportion of waters considered under paragraph (a)(3) of the 1986 regulations which will require an assessment under either the relatively permanent standard or significant nexus standard under the final rule is only 3.64% of all

aquatic resources that underwent jurisdictional determinations.[19] This 3.64% represents intrastate rivers, streams, wetlands, lakes and ponds, and other types of waters that were found to be non-jurisdictional after an evaluation under paragraph (a)(3) of the 1986 regulations under pre-2015 practice. An unknown yet likely small fraction of this 4% could potentially become jurisdictional under this final rule under either the relatively permanent standard or the significant nexus standard.

To delve into this matter more, the agencies reviewed AJD data under the 2015 Clean Water Rule, which provided a very different avenue for finding certain intrastate waters to be jurisdictional. The number of observations from the 2015 Clean Water Rule within ORM2 that could potentially have been comparable to the implementation of paragraph (a)(5) of the final rule was so small that the dataset is not statistically viable for comparison. In short, the number of features to which this applies is too small to use for inferences of change in scope.

### I.B.3.6.3   Comparison of the Final Rule to the Secondary Baseline

Under the 2020 NWPR, most waters that are assessed under paragraph (a)(5) of the final rule would have fallen under the 2020 NWPR's paragraph (b)(1) exclusion for waters not identified in that rule's four categories of "waters of the United States." Some waters evaluated under paragraph (a)(5) of the final rule may have been jurisdictional under the 2020 NWPR's category for "lakes and ponds, and impoundments of jurisdictional waters" (*e.g.*, non-tributary lakes and ponds that are inundated by flooding in a typical year from traditional navigable water, a territorial sea, jurisdictional tributary under the 2020 NWPR, or jurisdictional lake and pond, or impoundment under the 2020 NWPR).

As discussed in previous sections, the agencies have been using data associated with pre-2015 practice to estimate potential changes between the final rule and the 2020 NWPR, but there are also data constraints which prevent a direct comparison of resources the 2020 NWPR found to be jurisdictional compared to what the pre-2015 regulatory practice found jurisdictional for these non-navigable, intrastate waters. Generally speaking, there are likely few resources from pre-2015 regulatory practice that would become jurisdictional under the (a)(5) category under the final rule. The difference in scope of jurisdiction from the primary baseline is expected to be *de minimis*. Applying that forward to the 2020 NWPR, where the differences were also *de minimis*, the agencies believe that overall the changes in jurisdiction related to (a)(5) waters in the final rule in comparison to the 2020 NWPR's approach to non-navigable, isolated, intrastate waters will be *de minimis*.

### I.B.3.6.4   Documentation in ORM2

Under pre-2015 regulatory practice, in ORM2 the water type "Isolate" was used as a catch-all for the (a)(3) "other waters category" under that regime. This water type could be further broken down by Cowardin classification into lacustrine, palustrine, and riverine resources.

Under the 2020 NWPR, most waters that would be evaluated under paragraph (a)(5) of the final rule were captured under the paragraph (b)(1) water type of that rule in ORM2; however, there is no way to differentiate these from other non-jurisdictional features excluded under paragraph (b)(1) of the 2020

---

[19] Date range considered: January 1, 2010 to April 9, 2021.