UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT
*Electronically filed*

| | |
|---|---|
| **COMMONWEALTH OF KENTUCKY**, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,** *et al.*<br><br>*Defendants*. | Civil Action No. 3:23-cv-00007, consolidated with 3:23-cv-00008 |

### PLAINTIFF COMMONWEALTH OF KENTUCKY'S EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL

On March 31, 2023, this Court denied Kentucky's motion to preliminarily enjoin the Final Rule, which purports to interpret the term "waters of the United States" in the Clean Water Act ("Act" or "CWA"). Doc. 51, PageID.2120–41. In addition, this Court sua sponte dismissed Kentucky's complaint for lack of standing. *Id.* at PageID.2141. Both decisions are egregiously wrong. Thus, the Commonwealth, by and through Attorney General Daniel Cameron, moves this Court to enjoin the Final Rule pending appeal under Rule 8(a)(1)(C) of the Federal Rules of Appellate Procedure. Because the Commonwealth is suffering ongoing irreparable harm from the Final Rule, Kentucky respectfully requests a decision on its motion by Monday, April 10, 2023, so that, if necessary, it may request an emergency injunction pending appeal from the Sixth Circuit.

**ARGUMENT**

When considering whether to grant an injunction pending appeal, the Court considers four factors: whether the movant "has made a strong showing that he is likely to succeed on the merits"; whether the movant will be irreparably harmed; whether an injunction will "substantially injure the other parties interested in the proceeding"; and the public interest. *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 612 (6th Cir. 2020) (per curiam). Because the Court has held that Kentucky lacks standing, the Commonwealth focuses this motion on that topic. The Commonwealth has briefed all of the other relevant factors in its preliminary-injunction briefing, which it incorporates here. Doc. 10, PageID.380–401; Doc. 39, PageID.1869–86. And all those factors amply support an injunction pending appeal.[1]

This Court held that Kentucky lacks standing to challenge the Final Rule because it has not shown an imminent injury-in-fact. That ruling is one of a kind. Since 2015, the Agencies have issued a series of rules defining "waters of the United States," and since 2015, States have successfully challenged those rules based on the same injuries Kentucky claims here. *See Texas v. EPA*, --- F. Supp. 3d ---, 2023 WL 2574591 (S.D. Tex. Mar. 19, 2023); *Colorado v. EPA*, 445 F. Supp. 3d 1295 (D. Colo. 2020), *rev'd and vacated on other grounds*, 989 F.3d 874 (10th Cir. 2021); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356 (S.D. Ga. 2018); *Texas v. EPA*, 2018 WL 4518230 (S.D. Tex. Sept. 12, 2018); *North Dakota v. EPA*, 127 F. Supp. 3d 1047 (D.N.D. 2015). So

---

[1] Kentucky is likely to succeed on the merits of its claims. Doc. 10, PageID.380–97; Doc. 39, PageID.1869–84. It will suffer an irreparable harm absent injunctive relief. Doc. 10, PageID.397–400; Doc. 39, PageID.1884–86. And the public interest and balance of equities support injunctive relief here. Doc. 10, PageID.401; Doc. 39, PageID.1886.

2

this is now the *only court* to hold that a sovereign state lacks standing to challenge a rule redefining the Agencies' jurisdiction under the CWA. Respectfully, the five other courts got it right, and this one got it wrong.

The Final Rule harms Kentucky in its capacity as a sovereign, as a regulator, and as a landowner under the CWA. Because these imminent (indeed, now-ongoing) injuries-in-fact are traceable to the Final Rule and would be redressed by a favorable decision here, Kentucky has standing to sue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In holding otherwise, this Court committed several legal errors.[2]

## I.   Kentucky has standing as a sovereign.

Everyone agrees that Kentucky has "traditional and primary power over land and water use" within its borders. *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 174 (2001); *Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 631–32 (2013). And no one disputes that once the Agencies assume jurisdiction over a water body in the Commonwealth, Kentucky is relegated to second fiddle when it comes to water regulation. *See generally* 33 U.S.C. §§ 1251 *et seq.*; U.S. Const. art. VI cl. 2. What's more, the Agencies acknowledge that the Final Rule gives them jurisdiction over *new waters* in Kentucky—waters that were under Kentucky's exclusive jurisdiction before the Final Rule's effective date. *See* Doc. 31, PageID.975; Doc. 45, PageID.2008–09.

---

[2]   The Commonwealth points out that the Court's decision to dismiss this case sua sponte for lack of standing was itself error. *See Chase Bank USA, NA v. City of Cleveland*, 695 F.3d 548, 558 (6th Cir. 2012) ("Before dismissing a complaint sua sponte, even if the dismissal is without prejudice, the court must give notice to the plaintiff."). Assuming that the Commonwealth did not submit enough evidence to establish standing for purposes of a preliminary injunction (a proposition that the Commonwealth vigorously disputes), it does not follow that the Commonwealth cannot introduce sufficient evidence for purposes of this case more generally.

With all that established, the standing analysis should write itself: Kentucky has a sovereign interest in regulating waters within its borders. The Final Rule infringes on that sovereign interest by expanding federal jurisdiction over waters that Kentucky had previously regulated exclusively. And a favorable decision here would redress that injury by keeping primary regulatory authority over those intrastate waters with the Commonwealth. *See, e.g.*, *Georgia*, 326 F. Supp. 3d at 1367.

But rather than follow that straightforward analysis, this Court blazed an unprecedented path, concluding that federal infringement on Kentucky's sovereignty is not an injury-in-fact. Doc. 51, PageID.2135. That holding contradicts Supreme Court precedent, *see, e.g.*, *New York v. United States*, 505 U.S. 144, 174–77 (1992) (discussing the injury that New York suffered to its sovereign interest from a statute coercing the state to take title to and possession of the low level radioactive waste generated within its borders); recent Sixth Circuit precedent, *see, e.g.*, *Kentucky v. Biden*, 23 F.4th 585, 598 (6th Cir. 2022) ("*Biden*") ("States . . . have sovereign interests to sue when they believe that the federal government has intruded upon areas traditionally within states' control."); *Arizona v. Biden*, 40 F.4th 375, 383 (6th Cir. 2022) (finding no injury-in-fact in part because the challenged guidance "does not regulate the States by telling them what they can or cannot do in their jurisdictions"); and well-regarded treatises, *see, e.g.*, 13B Fed. Prac. & Proc. Juris. § 3531.11.1 (3d ed.) ("[T]here is no difficulty in recognizing standing to protect proprietary interests or sovereign interests in such matters as allocation of state waters." (footnotes omitted)); *see also id.* at ns. 2 & 5. Federal infringement on a

State's sovereign interest is an injury-in-fact—full stop.

Among the mountain of opinions confirming this are *Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016), and *Kansas v. United States*, 249 F.3d 1213, 1222–23 (10th Cir. 2001). This Court's attempts to distinguish those cases fall short. When the Fifth Circuit held that "the institutional injury to Texas from the inversion of the federalism principles enshrined in the Clean Air Act may constitute irreparable injury," it was not suggesting equivocation on that point. *Texas v. EPA*, 829 F.3d at 434. Instead, it was explaining that separate from the compliance costs imposed by the rule, the injury to Texas's sovereignty was a *distinct* injury establishing the state's standing. This Court erroneously conflated these alternative injuries in *Texas v. EPA* by suggesting that compliance costs are necessary to establish an infringement on sovereignty. Doc. 51, PageID.2135.

Additionally, this Court suggested that *Kansas v. EPA* is inapt because "Kansas was not pursuing pre-enforcement review and there were no questions as to whether the injury to its sovereignty was certainly impending." *Id*. But that distinction does not detract from the Tenth Circuit's holding that federal infringement of sovereign interests alone is an injury-in-fact. *Kansas*, 249 F.3d at 1227. And this Court misconstrues the "imminence" part of the injury-in-fact inquiry. A state can establish an imminent injury by showing a "risk of harm" to its sovereign or quasi-sovereign interests. *Massachusetts v. EPA*, 549 U.S. 497, 518, 521 (2007); *see also Kansas*, 249 F.3d at 1227–28 ("[T]o resolve this case, [the court] need not decide the precise extent of the State's jurisdiction over the [land] tract" because the State's

5

"sovereign interests and public policies [are] at stake."). Kentucky has "show[n] negative effects" that the Final Rule will have on its sovereign interest in water regulation—i.e., losing its position as primary regulator. *See Biden*, 23 F.4th at 602. And the Agencies concede that they would regulate more waters than before, quibbling only with the size of the harm. Doc. 45, PageID.2008 (Court: "[DOJ] ha[s] not argued that this [Final Rule] won't encompass more waters than were encompassed under the status quo, you're just saying it's not going to be a very big change." DOJ: "Yes, Your Honor. It's going to be slight.").[3]

Nor is it necessary for the Commonwealth to identify a specific water that the Agencies will now control. Doc. 51, PageID.2136. "States are not normal litigants for the purposes of invoking federal jurisdiction" and are owed "special solicitude." *Massachusetts*, 549 U.S. at 518, 520. When special solicitude is appropriate, a state can establish standing "without meeting all the normal standards for redressability and immediacy." *Id.* at 517–18 (quoting *Lujan*, 504 U.S. at 573 n.7). Standing will exist "if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Id.* at 518. Indeed, a state proves an injury-in-fact to its sovereignty sufficient for constitutional standing when it shows that the federal government is either (1) threatening to "override" an already-imposed state policy or (2) intruding "upon an

---

[3] In any event, this is no longer a pre-enforcement challenge. *See* Doc. 45, PageID.2042 (Court: "What practically happens on March 20th?" DOJ: "Well, your Honor, at that point the rule would go into effect and people would need to start assessing jurisdiction under the rule versus the status quo. . . . I mean, I suppose what I'm saying is that it will just be the law of the land [on March 20th]. And so it will replace the status quo regime."). There is now no question whether Kentucky's injuries are certainly impending; they are *ongoing*, as Kentucky and its citizens are operating under the unlawful Final Rule instead of the pre-March 20 status quo. *Id.*

area traditionally left to the states." *Biden*, 23 F.4th at 599.

In *Biden*, the Sixth Circuit held that Kentucky had established standing in its sovereign and quasi-sovereign capacities by alleging the "negative effects" on those interests. *See id.* at 602; *see also Kentucky v. Yellen*, 54 F.4th 325, 329, 336–37 (6th Cir. 2022) ("*Yellen*") (concluding that Kentucky had established standing based on its sovereign injury because the federal action "at least arguably" threatened a significant intrusion upon state taxing authority); *id.* at 358–62 (6th Cir. 2022) (Nalbandian, J., concurring in part and dissenting in part) (discussing the relaxed imminence requirement for States). And the Sixth Circuit rejected the federal government's objection that Kentucky had not pointed to specific contracts that would be affected. *Biden*, 23 F.4th at 594 n.7. Instead, when an agency action is so broad that its impact on the State is "obvious[]," *id.*, or "virtual[ly] certain[]," *id.* at 595, granular proof is not required. *See also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565–66 (2019) (allowing States to establish standing by relying "on the predictable effect of Government action"); *Yellen*, 54 F.4th at 336–37; *Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021), *rev'd and remanded on other grounds*, 142 S. Ct. 2528 (2022) (explaining that "large-scale policy" is "amenable to challenge using large-scale statistics and figures"); *Kansas*, 249 F.3d at 1227–28.

Kentucky has sufficiently alleged the "negative effects" of the Final Rule to establish standing as a sovereign. *Biden* 23 F.4th at 602. Kentucky is a wet state, with rivers on three borders and more miles of navigable water than any state other

than Alaska.[4] And regulating its waters is an "essential attribute" of Kentucky's sovereignty. *Tarrant Reg'l Water Dist.*, 569 U.S. at 631. Given the Agencies' concessions that the Final Rule imposes federal jurisdiction over new intrastate waters, *see, e.g.*, Doc. 45, PageID.2008–09, it is "obvious" and "virtual[ly] certain[]" that at least *some* waters Kentucky had previously regulated exclusively will now be under federal control. *See Biden*, 23 F.4th at 594 n.7, 595; *Yellen*, 54 F.4th at 336–37 (finding standing where a government regulation "at least arguably" infringed a sovereign right). And *any* infringement on Kentucky's sovereignty is an injury-in-fact establishing standing. *See Georgia*, 326 F. Supp. 3d at 1367.

## II.    Kentucky has standing as a regulator.

Kentucky plays a vital role in implementing the CWA. The CWA requires Kentucky to establish Water Quality Standards ("WQS") for each water body within the definition of "waters of the United States" located in the Commonwealth. *See* 33 U.S.C. §§ 1311(b)(1)(C), 1313(e)(3)(A), 1341(a)(1). Kentucky is also statutorily required to submit biennially a water quality report to the EPA describing "the water quality of all navigable waters in" the Commonwealth and analyzing how well these waters provide for "the protection and propagation of a balanced population of shellfish, fish, and wildlife, and allow recreational activities in and on the water." 33 U.S.C. § 1315(b)(1)(A)–(B). And if it is determined that a water body falls below the WQS, the Commonwealth must take corrective action. *See* 40 C.F.R. § 130.7.

Kentucky's standing as a regulator is therefore self-evident. *Bonacci v. Transp.*

---

[4]    University of Kentucky, *Water Fact Sheet*, https://perma.cc/U2CS-Y3FQ

*Sec. Admin.*, 909 F.3d 1155, 1159 (D.C. Cir. 2018) ("A petitioner's standing to seek review of administrative action is usually self-evident if the complainant is an object of the action (or forgone action) at issue." (cleaned up)); *see also Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 43 (D.C. Cir. 2015) ("[R]egulatory constraints typically qualify as an injury in fact."). By expanding the "waters of the United States," the Final Rule requires Kentucky to act to meet its statutory obligations when the Commonwealth could otherwise rely on the prior regime. *See Biden*, 23 F.4th at 594–95. Kentucky must investigate its miles and miles of intrastate waterways to determine whether they are jurisdictional under the Final Rule and therefore must be monitored accordingly. Even if Kentucky's investigation reveals few additional "waters of the United States," that process—inspecting and surveying the Commonwealth—imposes significant start-up costs on Kentucky. *See* Doc. 10, PageID.407 (explaining that this process "will . . . cost Kentucky financially" because of the "significant time and resources" necessary to complete it).

Kentucky faces other compliance costs, too. "The Cabinet will need to develop a plan to address the implications of the Final Rule" on several other programs. *Id.* at PageID.408. That will also occupy state employee time and resources that could be used elsewhere. *Id.* Plus, Kentucky reviews and issues permits under the CWA. *Id.* Because, as the Agencies concede, more waters are jurisdictional under the Final Rule, it is "virtual[ly] certain[]" that more projects will implicate jurisdictional waters, thereby requiring the Cabinet to process more permit applications. *Biden*, 23 F.4th at 595. And there are no "imminence concern[s] about the compliance-costs"

9

because the Final Rule became effective March 20, triggering Kentucky's obligations under the CWA. *Yellen*, 54 F.4th at 342.

This Court held that such "compliance costs resulting from new government regulation can constitute irreparable injury, depending on their size and peculiarity." Doc. 51, PageID.2136. But that's not what the Sixth Circuit has instructed. Compliance costs *are* harm: "[T]he peculiarity and size of a harm affects its weight in the equitable balance, *not whether it should enter the calculus at all." Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023) (emphasis added). In any event, the costs to survey and assess miles of Kentucky's waterways is obviously significant. As is the cost of developing and modifying programs to comply with the CWA. And these large costs are peculiar to the Final Rule's expansion of federal jurisdiction. Thus, the compliance costs Kentucky has identified are an injury-in-fact as well as an irreparable harm. *Id.*

Still, the Court dismissed Kentucky's alleged compliance costs because the Commonwealth's declaration failed to predict exact dollar figures. Doc. 51, PageID.2136. But Kentucky need not provide such granular detail to establish standing. *See Yellen*, 54 F.4th at 342–43. It is sufficient for a State to affirm that the challenged federal action "requires [the state] to expend time and money that it would not expend but for the [federal action]." *Id.* at 342; *see also Texas v. Biden*, 20 F.4th at 971. Indeed, the declaration Kentucky submitted here is essentially as detailed as the declaration that established Tennessee's standing in *Yellen*. *Compare* Doc. 10-1 *with* 54 F.4th at 342. And where, as here, an agency action triggers obligations on

10

regulators "for the purpose of ensuring compliance," those unrecoverable costs—whatever the amount—are sufficient injury to establish standing and irreparable harm. *See Commonwealth v. Biden*, 57 F.4th at 556. That distinguishes this case from *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015), because there Mississippi could not show that DACA had caused increased costs to the state. Here, expanding the jurisdictional "waters of the United States" necessarily triggers regulatory obligations for Kentucky. Kentucky therefore also has standing to challenge the Final Rule in its role as regulator.

### III.  Kentucky has standing as a landowner.

Finally, Kentucky is like the Private-Sector Plaintiffs in that it owns and develops land. For example, Kentucky is home to more than 40 state parks, and many of "those parks are built around water features, lakes, [and] streams." Doc. 45, PageID.2026. And Kentucky regularly engages in public works projects on its lands that implicate jurisdictional waters, requiring assessments and sometimes permits.[5] Kentucky is therefore a direct object of the Final Rule as a landowner regularly engaged in activities regulated by the Final Rule, and Kentucky will need to obtain more permits and doing so will cost more. The Commonwealth's standing in this capacity is self-evident. *See Bonacci*, 909 F.3d at 1159.

This Court disagreed, holding that Kentucky had not proved the degree of certainty for its injury required by *Toilet Goods Association, Inc. v. Gardner*, 387 U.S. 158 (1967), and *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), to challenge a

---

[5]  *See, e.g.*, Kentucky Transportation Cabinet, *Bi-State Agreement Paves the Way for New Ohio River Bridge* (Mar. 28, 2023), *available at* https://tinyurl.com/2ywrtfd7.

11

regulation before it goes into effect. Doc. 51, PageID.2129, 2138 ("[Kentucky's] claim that its projects 'are more likely to require permitting' under the Rule . . . is too speculative to establish standing."). This Court found Kentucky and the Private-Sector Plaintiffs more like the plaintiffs in *Toilet Goods* who failed to establish standing than the plaintiffs with standing in *Abbott Labs*. The opposite is true.

Again, as a landowner and developer the Final Rule is "directed at [Kentucky] in particular," and the Commonwealth has explained how the expansive and vague Final Rule will impact its ability to secure permits. *See Abbott Labs*, 387 U.S. at 154. Flouting the Final Rule also "clearly expose[s] [Kentucky] to the imposition of strong sanctions," *Id. See, e.g.*, 33 U.S.C. § 1319; 40 C.F.R. § 19.4. And unlike in *Toilet Goods*, where the court was in the dark about when the regulation would be applied, the Final Rule became the "law of the land" on March 20, and "people [have] start[ed] assessing jurisdiction under the rule versus" the prior regime. Doc. 45, PageID.2042.

Finally, this Court's suggestion that Kentucky cannot be considered the "object" of the Final Rule because it has not identified "waters on [its] land [that] are now 'waters of the United States' [that] are subject to regulation" misapplies *Biden*. *See* Doc. 51, PageID.2131–32. There the Sixth Circuit was unpersuaded by "[t]he government and the dissent complain[ing] that the state plaintiffs [did] not introduce[] specific contracts into the record that will become subject to the" mandates at issue there. *Biden*, 23 F.4th at 594 n.7. That was because Kentucky showed that it possessed a plethora of contracts "with multiple federal agencies, . . . [a]nd the [mandate] [wa]s written so broadly that it would obviously apply to these

12

contracts." *Id*. Kentucky owns a plethora of "waters" over which the federal government is now exercising jurisdiction under the expansive Final Rule. This will impose all of the costs associated with owning water subject to the federal government's jurisdiction. *See* Doc. 18, PageID.656–59; *see also* Doc. 31, PageID.975 (admitting that the federal government's regulation of waters imposes costs). Kentucky therefore has standing to sue as a landowner. 13A Fed. Prac. & Proc. Juris. § 3531.4 (3d ed.) ("Standing is found readily, particularly when injury to some traditional form of property is asserted." (collecting cases)).

\* \* \*

For these reasons, the Court should grant an injunction pending appeal.


Respectfully submitted,

**Daniel Cameron**
**ATTORNEY GENERAL**

*/s/ Christopher L. Thacker*
Victor B. Maddox
Christopher L. Thacker
Lindsey R. Keiser
Harrison Gray Kilgore
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Victor.Maddox@ky.gov
Christopher.Thacker@ky.gov
Lindsey.Keiser@ky.gov
Harrison.Kilgore@ky.gov

*Counsel for the Commonwealth of Kentucky*
*ex rel. Daniel Cameron in his official capacity*
*as Attorney General of Kentucky*

## CERTIFICATE OF SERVICE

      I certify that on April 4, 2023, the above document was filed with the CM/ECF filing system.

                                */s/ Christopher L. Thacker*
                                Christopher L. Thacker

                                *Counsel for the Commonwealth of Kentucky ex rel. Daniel Cameron in his official capacity as Attorney General of Kentucky*