UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION
CIVIL ACTION NO. 3:23-cv-00007-GFVT (lead case,
consolidated with No. 3:23-cv-00008-GFVT)

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY; <br> KENTUCKY CHAMBER OF COMMERCE; <br> CHAMBER OF COMMERCE OF THE <br> UNITED STATES OF AMERICA; <br> ASSOCIATED GENERAL CONTRACTORS OF <br> KENTUCKY, INC.; <br> HOME BUILDERS ASSOCIATION OF KENTUCKY; <br> PORTLAND CEMENT ASSOCIATION; and <br> GEORGIA CHAMBER OF COMMERCE, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION <br> AGENCY, ET AL., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PRIVATE-SECTOR PLAINTIFFS' EMERGENCY MOTION FOR
INJUNCTION PENDING APPEAL**

Pursuant to Federal Rule of Civil Procedure 62(d), Federal Rule of Appellate Procedure 8(a)(1)(C), and 5 U.S.C. § 705, the Private-Sector Plaintiffs[1] move this Court for an injunction that stays the Final Rule[2]—pending their appeal of this Court's March 31, 2023, Order denying a motion for a preliminary injunction and dismissing the case (ECF No. 51) ("Order") to the United States Court of Appeals for the Sixth Circuit. In light of the irreparable harm that is being suffered

---

[1] Kentucky Chamber of Commerce, Chamber of Commerce of the United States of America, Associated General Contractors of Kentucky, Home Builders Association of Kentucky, Portland Cement Association, and Georgia Chamber of Commerce.

[2] *Revised Definition of "Waters of the United States,"* 88 Fed. Reg. 3004 (Jan. 18, 2023).

1

by Private-Sector Plaintiffs and their members absent an injunction, Private-Sector Plaintiffs request a decision on their motion by Monday, April 10, 2023, so that, if necessary, they may request an emergency injunction pending appeal from the Sixth Circuit.

## INTRODUCTION

Like many plaintiffs in the past eight years, Private-Sector Plaintiffs here challenged a federal rule that sets forth a definition of the term "waters of the United States" in the Clean Water Act ("CWA"). Since its effective date of March 20, 2023, that definitional rule dictates whether an unpermitted discharge into a water or wetland is now unlawful under the CWA, subject to civil penalties of $64,618 per day and to federal criminal charges if done negligently. As a result of the rule, Private-Sector Plaintiffs' members with current or imminent projects involving land with waters or wetlands that are, or may be, newly jurisdictional under the Final Rule will incur otherwise unnecessary expenses or delay to ensure compliance with the law.

In none of the numerous previous cases challenging a rule defining or redefining "waters of the United States" has any court—including the U.S. Supreme Court—ever dismissed for lack of standing.[3] Until now. In its Order, this Court reasoned that Private-Sector Plaintiffs do not face certain and imminent injury until they or the Agencies definitively determine there are jurisdictional waters on their property. The Court concluded that, until such a determination is made, Private-Sector Plaintiffs are incurring only "preliminary" costs to determine if the Final

---

[3] *See Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617 (2018); *In re E.P.A.*, 803 F.3d 804, 805 (6th Cir. 2015), *vacated on grounds that jurisdiction is proper in district court sub nom. In re United States Dep't of Def.*, 713 F. App'x 489 (6th Cir. 2018) (staying 2015 WOTUS rule in facial challenge); *Pascua Yaqui Tribe v. U.S. EPA*, 557 F. Supp. 3d 949, 957 (D. Ariz. 2021) (vacating navigable waters protection rule); *Navajo Nation v. Regan*, 563 F. Supp. 3d 1164, 1170 (D.N.M. 2021) (same); *Texas v. United States Env't Prot. Agency*, 389 F. Supp. 3d 497 (S.D. Tex. 2019) (permanent injunction against 2015 WOTUS definition); *North Dakota v. EPA*, 127 F. Supp. 3d 1047 (D.N.D. 2015) (preliminary injunction against 2015 WOTUS definition).

Rule applies to them. With respect, Private-Sector Plaintiffs submit that this Court erred. The Final Rule requires Private-Sector Plaintiffs' members to take immediate steps with respect to ongoing or planned projects that they believe impact jurisdictional waters. *Without any further action by the Agencies*, the Final Rule changes what is and is not unlawful behavior, and it civilly and criminally penalizes—through continuing daily penalties and even imprisonment—those who do *not* take action or delay projects to figure out where their ongoing or planned behavior now falls.

What is more, this Court's order also erroneously found the case not yet ripe. Private-Sector Plaintiffs raise a facial Administrative Procedure Act ("APA") challenge of the type that courts regularly consider and that does not depend on any particular factual application. The Order's standing and ripeness conclusions fly directly in the face of numerous decisions allowing facial, pre-enforcement challenges to regulations defining "waters of the United States." *See In re E.P.A.*, 803 F.3d 804, 805 (6th Cir. 2015), *vacated on grounds that statutory jurisdiction was proper in district court sub nom. In re United States Dep't of Def.*, 713 F. App'x 489 (6th Cir. 2018); *Pascua Yaqui Tribe v. U.S. EPA*, 557 F. Supp. 3d 949, 957 (D. Ariz. 2021); *Navajo Nation v. Regan*, 563 F. Supp. 3d 1164, 1170 (D.N.M. 2021); *Texas v. United States Env't Prot. Agency*, 389 F. Supp. 3d 497 (S.D. Tex. 2019); *North Dakota v. EPA*, 127 F. Supp. 3d 1047 (D.N.D. 2015).

In sum, Private-Sector Plaintiffs are entitled to an injunction effectively staying the Final Rule pending appeal for the reasons stated below and in their Memorandum in Support of Motion for a Preliminary Injunction (ECF No. 14) ("Mem.") and Reply in Support of Motion for Preliminary Injunction (ECF No. 37-1).

## STANDARD OF REVIEW

Fed. R. Civ. P. 62(d) provides district courts power to grant an injunction pending appeal from an interlocutory order or final judgment, and Fed. R. App. P. 8 requires a party to seek such

3

an injunction from the district court before doing so in the court of appeals. In deciding whether to enter an injunction or stay pending appeal, a court must consider four factors: whether the movant "has made a strong showing that he is likely to succeed on the merits"; whether the movant will be irreparably harmed; whether an injunction will "substantially injure the other parties interested in the proceeding"; and the public interest. *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 612 (6th Cir. 2020) (per curiam).

## ARGUMENT

All the factors for an injunction pending appeal are met here. As for the first factor, Private-Sector Plaintiffs are likely to succeed on appeal because (1) the Order improperly dismissed the case without providing them notice, (2) they have standing, as they and their members face certain and imminent injury from the Final Rule, (3) their claims are ripe, and (4) they are likely to succeed on the merits of their legal claims that the Final Rule is unlawful. Private-Sector Plaintiffs also meet the remaining requirements for an injunction staying the rule pending appeal because they will face irreparable harm in the absence of an injunction, and the balance of equities and public interest support an injunction.

**I.      Private-Sector Plaintiffs are likely to succeed on appeal.**

**A.      This Court erred in dismissing the case without providing notice.**

As an initial matter, this Court erred in dismissing the case sua sponte on a motion for a preliminary injunction without providing notice to the Plaintiffs. As the Sixth Circuit has recognized, "[b]efore dismissing a complaint sua sponte, even if the dismissal is without prejudice, the court must give notice to the plaintiff" to allow the plaintiff the opportunity to amend its complaint if necessary. *See, e.g.*, *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 558 (6th Cir. 2012) (citing *Morrison v. Tomano*, 755 F.2d 515, 516–17 (6th Cir. 1985)).

4

B.    **Private-Sector Plaintiffs have standing.**

It is well-established that compliance costs—of any size—are sufficient injury-in-fact for standing. As the Sixth Circuit explained, "compliance costs are a recognized harm for purposes of Article III." *Kentucky v. Yellen*, 54 F.4th 325, 342–43 (6th Cir. 2022); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").[4] The costs incurred by Private-Sector Plaintiffs' members in determining whether waters are jurisdictional under the Final Rule are a necessary part of complying with the Final Rule and the CWA. The CWA provides that absent a permit, "the discharge of any pollutant [into navigable waters] by any person shall be unlawful," 33 U.S.C. §§ 1311(a), 1362(12). The term "waters of the United States," and the Final Rule's interpretation of that term, thus defines what Private-Sector Plaintiffs members can and cannot do with their land—they cannot build or otherwise discharge into "waters of the United States" without a CWA permit. Because the Final Rule is a definitional rule that dictates the reach of the CWA's prohibition and requirements, the costs of determining the applicability of the Final Rule's definition and resulting permitting obligations are compliance costs.

Put another way, any individual or entity with ongoing or planned activities that may affect waters or wetlands is currently the "object of the rule," and there "is ordinarily little question" that he or she has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). As the Defendants admitted, immediately upon the rule's March 20 effective date, "people [] need[ed] to start assessing jurisdiction under the rule versus the status quo" to know whether they are in

---

[4] The Order's reliance on *Commonwealth v. Biden*, 57 F.4th 545 (6th Cir. 2023), for the proposition that only peculiar and sizable compliance costs are injury-in-fact for standing purposes is incorrect and directly conflicts with *Kentucky v. Yellen*. Order at 13–14. That case was about "irreparable harm," not standing. *Biden*, 57 F.4th at 556.

5

compliance with the law (ECF No. 45 at 55). To proceed without this analysis would potentially subject landowners to federal criminal charges because the CWA imposes such charges even for negligent violations of § 1311. 33 U.S.C. § 1319. Immediately upon a violation, even if the Agencies have not yet told the landowner that there are "waters of the United States" on their property, "EPA may issue a compliance letter and demand that [they] cease construction, engage in expensive remedial measures, and abandon any use of the property. If the owners do not do the EPA's bidding, they may be fined up to $75,000 [i.e., $37,500 multiplied by 2, as explained in Justice Alito's opinion] per day." *Sackett v. E.P.A.*, 566 U.S. 120, 132 (2012) (Alito, J., concurring) (this amount would be $129,236 [i.e., $64,618 multiplied by 2] per day in 2023, *see* 88 Fed. Reg. at 988–89).

As the Supreme Court has recognized, because of the lack of clarity and the severe potential penalties, these assessments must be done even where jurisdiction may seem at first glance unclear or unlikely. *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 594 (2016) ("It is often difficult to determine whether a particular piece of property contains waters of the United States, but there are important consequences if it does."). And, as Justice Alito explained in *Sackett I*, "[a]ny piece of land that is wet at least part of the year is in danger of being classified by EPA employees as wetlands covered by the Act." 566 U.S. at 132 (Alito, J., concurring). The question of whether property contains jurisdictional waters is critical for entities with planned or ongoing projects to determine. Assessing jurisdiction is no easy task, as "the Act's reach is 'notoriously unclear'"—but this assessment is critical, because "the consequences to landowners even for inadvertent violations can be crushing." *Hawkes Co.*, 578 U.S. at 602 (Kennedy, J., joined by Thomas and Alito, JJ., concurring). As the Supreme Court has "long held," Plaintiffs "need not await enforcement proceedings before challenging final agency action where such proceedings

carry the risk of 'serious criminal and civil penalties.'" *Id.* at 600 (opinion of the Court). Private parties "need not assume such risks while waiting for EPA to 'drop the hammer' in order to have their day in court." *Id.*

This Court premised its conclusion that there was no injury, in part, on a misunderstanding that Private-Sector Plaintiffs' members are not the "objects" of the action until they or the Agencies "determine that waters on their land are now 'waters of the United States' and are subject to regulation." Order at 12–13. But, as explained above, that is not how the Final Rule works on Private-Sector Plaintiffs' members. They are obligated to take action immediately because the Final Rule makes waters jurisdictional, and therefore certain ongoing or imminently planned activities newly unlawful, *without any further steps by the Agencies*.

In fact, the U.S. District Court for the District of Columbia rejected reasoning similar to that of this Court's March 31, 2023, Order in *American Petroleum Institute v. Johnson*, 541 F. Supp. 2d 165, 173 (D.D.C. 2008). There, the court held that plaintiffs had standing to bring an APA challenge to EPA's regulation defining the term "navigable waters," reasoning that the plaintiff had established "injury in fact" because the regulatory definition "directly influences [their] business decisions." *Id.* at 176. The court rejected the notion that plaintiffs needed to identify newly jurisdictional waters to establish standing. *Id.* at 174–75 ("plaintiffs' declarants need not be experts in hydrology nor have a sophisticated legal understanding of 'navigability' in order to demonstrate plaintiffs' injuries.").

Other courts have reached the same conclusion in similar circumstances. In a recent case, the Sixth Circuit has made clear that compliance costs giving rise to standing include costs incurred to determine the need to comply—what the Order here called "preliminary" costs. *See Yellen*, 54 F.4th at 342 (finding that plaintiff State's compliance costs "to determine whether [the plaintiff's]

7

tax policies may provoke a recoupment action" by the defendant federal agency constitute an injury). And, in another case, the Supreme Court recognized the same principle, finding alfalfa farmers' costs to conduct testing to determine if their crops contain cross-pollinated genetically engineered material was sufficiently concrete to satisfy the injury-in-fact requirement in a challenge to a U.S. Department of Agriculture deregulatory decision that created a significant risk of gene flow to non-genetically-engineered varieties of alfalfa. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 155 (2010).

In this case, Private-Sector Plaintiffs' members have demonstrated standing based on compliance costs that their members will incur as a result of the rule. As shown in the declarations, Private-Sector Plaintiffs' members have ongoing or planned activities on lands with waters or wetlands. Heck Decl. (ECF No. 13-1) ¶¶ 10–12 (three permit projects on which Alliance is currently working with the Corps); Mitchell Decl. (ECF No. 13-1) ¶¶ 15–16 (identifying rail project with impacts to perennial stream and pond); O'Bryan Decl. (ECF No. 13-1) ¶ 16 (farming activities involving disputed water features); Tollison Decl. (ECF No. 13-1) ¶ 11 (property currently being marketed for development). To continue these activities, they are immediately obligated to assess the extent of newly jurisdictional waters and new compliance obligations under the Final Rule, incurring substantial costs. Mem. at 22–24.[5]

In addition, there is another category of compliance costs that the Order did not even address—the Final Rule's declaration that landowners can no longer rely on approved jurisdictional determinations (identifying the presence or absence of "waters of the United States"

---

[5] The Order (at 8–9) fails to apply the well-established principle that where a group of plaintiffs seek the same relief, only one plaintiff needs to demonstrate standing. *Mays v. LaRose*, 951 F.3d 775, 782 (6th Cir. 2020) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977)).

on specific parcels of land) made by the Corps under the 2020 Rule. *Id.* at 21–22; Reply at 8. One of Private-Sector Plaintiffs' members, SEDA, identified an approved jurisdictional determination on which the member will no longer be able to rely. Because the Final Rule asserts federal jurisdiction over water features that were not "waters of the United States" under the 2020 Rule, "SEDA will have to obtain a new approved jurisdictional determination to obtain a CWA permit" to develop the property. Tollison Decl. ¶ 12 (ECF No. 13-1). That is unquestionably an immediate injury that has a direct impact on business decisions and inflicts economic harm on SEDA. *Cf. Hawkes Co.*, 578 U.S. at 599-602 (holding that jurisdictional determinations are final agency actions judicially reviewable under the Administrative Procedure Act, and emphasizing that an "affirmative" jurisdictional determinations—a jurisdictional determination that finds that a water is a WOTUS—denies the landowner a five-year safe harbor against agency enforcement).[6]

  **C.**   **Private-Sector Plaintiffs' claims are ripe.**

The Order also incorrectly finds that Private-Sector Plaintiffs' claims are not ripe. When plaintiffs challenge final agency action, as here, pre-enforcement challenges are ripe based on the fitness of the issues for judicial review and the hardship to the parties of withholding consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). "[T]he fitness of an issue for judicial decision depends on whether it is 'purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'" *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1281 (D.C. Cir. 2005) (quoting

---

[6] It is irrelevant that the Final Rule had not yet taken effect at the time Plaintiffs brought suit. The question for standing is whether the injury was certain and imminent, not whether it was happening or had happened. The Final Rule was set to take effect on March 20, 2023, and on that date Private-Sector Plaintiffs were immediately required to assess whether their property contained "waters of the United States" and come into compliance. But in all events, the Final Rule is in effect now. The injury is no longer "imminent" but "ongoing."

9

*Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003)). When "a purely legal claim" is presented "in the context of a facial challenge . . . [it] is 'presumptively reviewable.'" *Id.* (quoting *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 757 (D.C. Cir. 2003).

Private-Sector Plaintiffs raise a purely legal APA challenge that is presumptively reviewable. And when, as here, the claims do not rest on contingent future events such as a member submitting a permit application, facial claims that a rule is illegal under the APA are ripe for review. *See id.* at 1282. That makes this case materially different from *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163 (1967), where the regulation served only as notice that the agency may order inspection of certain facilities, and the claims turned on the context in which inspection was ordered. *Id.* at 163–64.

**D.    Private-Sector Plaintiffs are likely to succeed on the merits of their claims.**

As Private-Sector Plaintiffs show in their motion for preliminary injunction, they are also likely to succeed on the merits of a number of their claims that the Final Rule is arbitrary and capricious and contrary to law. ECF No. 13. For example, the Final Rule, among other things, reads the word "navigable" out of the CWA by asserting jurisdiction over all interstate waters regardless of navigability. It also exceeds the Agencies' statutory authority as articulated by the Supreme Court in *Rapanos*, as it introduces a new version of the significant nexus test that the plurality rejected and that exceeds the test that Justice Kennedy would have applied. As the Southern District of Texas correctly found, these claims are likely to succeed on the merits. *See* ECF No. 46-1 at 19–26.

**II.   Irreparable harm, balance of the equities, and the public interest support an injunction pending appeal.**

For the reasons stated in Private-Sector Plaintiffs' motion for a preliminary injunction (ECF No. 14) and reply in support (ECF No. 37-1), which are incorporated herein by reference,

10

Private-Sector Plaintiffs also meet the irreparable harm, balance of the equities, and public interest prongs and therefore are entitled to an injunction. As the Southern District of Texas recently agreed, the Supreme Court's forthcoming decision in *Sackett* strongly weights the public interest in favor of an injunction. See ECF No. 46-1 at 30.

As for irreparable harm, the controlling case is *Commonwealth v. Biden*, which holds that compliance costs—which are "unrecoverable" "[d]ue to the federal government's sovereign immunity"—are always irreparable harm. 57 F.4th at 556. While the Court noted that the peculiarity and size of those compliance costs may sometimes be relevant to the "weight" of the harm, those considerations do not affect whether compliance costs constitute irreparable harm, but rather go to the balance of equities. *Id.* That analysis supports an injunction here. The harm to Private-Sector Plaintiffs is significant. They will incur substantial compliance costs in hiring consultants to determine whether and to what extent they have newly jurisdictional waters on their property, and if so, to seek the required permitting approvals. *See* Mem. at 21–24. The Agencies have publicly announced that the Final Rule is in effect and is "operative in all jurisdictions of the United States except Idaho and Texas."[7] As a result, to be in compliance with the CWA and the Final Rule, Private-Sector Plaintiffs' members must immediately ensure their activities do not result in unlawful discharges to areas designated by the Final Rule as "waters of the United States." On the other hand, the government's countervailing interest is minimal, and the public interest

---

[7] U.S. EPA, Definition of "Waters of the United States": Rule Status and Litigation Update, https://www.epa.gov/wotus/definition-waters-united-states-rule-status-and-litigation-update (emphasis in original). Likewise, the Army has announced that "[t]he 2023 Rule is operative in all U.S. jurisdictions except the states of Idaho and Texas," and, by contrast, that "[u]ntil further notice, federal Clean Water Act jurisdiction in Idaho and Texas will continue to be determined under the pre-2015 regulatory regime." U.S. Army Corps of Engineers, 20 March 2023 - Final Revised Definition of "Waters of the United States" Becomes Effective https://www.usace.army.mil/Media/Announcements/Article/3335318/20-march-2023-final-revised-definition-of-waters-of-the-united-states-becomes-e/.

11

weighs in favor of entering an injunction and staying the rule pending appeal because there is no public interest in preserving an unlawful rule, the Supreme Court will soon clarify the appropriate interpretation of "waters of the United States," and the government (albeit incorrectly) contends that the Final Rule has de minimis impact in any event. Mem. at 25–26. Indeed, the United States has not even filed a notice of appeal from the Southern District of Texas's order of March 19, 2023, that enjoined enforcement of the rule in Idaho and Texas, much less sought a stay of that order pending appeal.

## CONCLUSION

This Court should enjoin enforcement of the Final Rule against Private-Sector Plaintiffs and their members pending appeal.

Dated: April 5, 2023

/s/ Elbert Lin
Charles E. English, Jr. ("Buzz")
Sarah P. Jarboe
LaJuana S. Wilcher
English, Lucas, Priest & Owsley, LLP
1101 College Street; P.O. Box 770
Bowling Green, KY 42102-0770
(270) 781-6500
benglish@elpolaw.com
sjarboe@elpolaw.com
lwilcher@elpolaw.com

Elbert Lin (*pro hac vice*)
Hunton Andrews Kurth LLP
951 East Byrd Street, East Tower
Richmond, VA 23219
(804) 788-8200
elin@HuntonAK.com

Matthew Z. Leopold (*pro hac vice*)
Kerry L. McGrath (*pro hac vice*)
Erica N. Peterson (*pro hac vice*)
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1500
mleopold@HuntonAK.com
kmcgrath@HuntonAK.com
epeterson@HuntonAK.com

*Counsel for Plaintiffs Kentucky Chamber of Commerce, Chamber of Commerce of the United States of America, Associated General Contractors of Kentucky, Inc., Home Builders Association of Kentucky, Portland Cement Association, and Georgia Chamber of Commerce*

Andrew R. Varcoe (*pro hac vice*)
Stephanie A. Maloney (*pro hac vice*)
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
(202) 463-5337
avarcoe@USChamber.com
smaloney@USChamber.com

13

*Counsel for Plaintiff Chamber of Commerce of the United States of America*

## **CERTIFICATE OF SERVICE**

I certify that on this 5th day of April 2023, I filed a copy of the above document with the Court's electronic-filing system, which will send an electronic copy to all counsel.

/s/ Elbert Lin