# EXHIBIT 1

Oral Argument Transcript,
*Or. Cattlemen's Ass'n v. EPA*,
3:19-cv-00564-AC
(D. Or. Aug. 7, 2020), ECF No. 110

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 1 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 2 of 58 - Page ID#: 2261

1

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE DISTRICT OF OREGON

3   OREGON CATTLEMEN'S ASSOCIATION,)
                                   )
4           Plaintiff,             )   Case No. 3:19-cv-00564-AC
                                   )
5       v.                         )
                                   )
6   UNITED STATES ENVIRONMENTAL    )   August 6, 2020
    PROTECTION AGENCY, et al.,     )
7                                  )
            Defendants.            )   Portland, Oregon
8   _____)

9

10

11

12

13

14           **Preliminary Injunction Hearing**

15              (By Videoconference)

16           TRANSCRIPT OF PROCEEDINGS

17   BEFORE THE HONORABLE MICHAEL W. MOSMAN

18      UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

Case 3:19-cv-00564-AC    Document 110    Filed 10/27/20    Page 2 of 57
Case: 3:23-cv-00007-GFVT    Doc #: 57-1    Filed: 04/13/23    Page: 3 of 58 - Page ID#: 2262

2

| | |
|---|---|
| 1 | |
| 2 | APPEARANCES |
| 3 | |
| 4 | FOR THE PLAINTIFF:       Mr. Anthony L. Francois |
| 5 | Mr. Daniel M. Ortner<br>Ms. Christina M. Martin<br>Pacific Legal Foundation |
| 6 | 930 G. Street<br>Sacramento, CA 95814 |
| 7 | |
| 8 | |
| 9 | FOR THE DEFENDANTS:      Mr. Jonathan Brightbill<br>Department of Justice |
| 10 | Environmental and Natural Resources<br>Division |
| 11 | 950 Pennsylvania Avenue NW, Suite 2133<br>Washington, DC 20530 |
| 12 | |
| 13 | |
| 14 | FOR THE INTERVENOR<br>DEFENDANT COLUMBIA |
| 15 | RIVERKEEPER:             Ms. Anna M. Sewell<br>Earthjustice |
| 16 | 1001 G Street NW, Suite 1000<br>Washington, DC 20001 |
| 17 | |
| 18 | Ms. Janette K. Brimmer<br>Earthjustice |
| 19 | 810 Third Avenue, Suite 610<br>Seattle, WA 98104 |
| 20 | |
| 21 | COURT REPORTER:          Bonita J. Shumway, CSR, RMR, CRR<br>United States District Courthouse |
| 22 | 1000 S.W. Third Ave., Room 301<br>Portland, OR  97204 |
| 23 | (503) 326-8188 |
| 24 | |
| 25 | |

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 3 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 4 of 58 - Page ID#: 2263

3

1       (P R O C E E D I N G S)

2       (August 6, 2020; 2:11 p.m.)

3                * * * * *

4       THE COURTROOM DEPUTY:  We're here today in Case No.

5   3:19-cv-564-AC, for oral argument in case Oregon Cattlemen's

6   Association versus United States Environmental Protection

7   Agency, et al.

8       Counsel, please state your name for the record.

9       MR. FRANCOIS:  Good afternoon, Your Honor.  Tony

10  Francois for plaintiff Oregon Cattlemen's Association.  And I'm

11  joined today by my colleagues, Christina Martin and Daniel

12  Ortner.  Thank you.

13      MR. BRIGHTBILL:  Jonathan Brightbill, the Department

14  of Justice, for the agencies defendants.

15      MS. SEWELL:  This is Anna Sewell on behalf of

16  intervenor Columbia Riverkeeper, and I'm joined today by

17  Janette Brimmer.

18      THE COURT:  Thank you all for being here.  There are

19  several issues to discuss today.  I appreciate the briefing

20  that's helped us all get ready.

21      The parties agree that in seeking a preliminary

22  injunction, like in this case, the traditional four-part test

23  outlined in *Winter* and explained again in *Alliance for Wild*

24  *Rockies* applies, and that in analyzing the predicate issue

25  here, the issue of standing, that I look also to the *Lujan* case

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 4 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 5 of 58 - Page ID#: 2264

4

1    for some guidance as to how to think about associational

2    standing.

3           So I want to start with standing, even though some of

4    the same facts and even, to some degree, arguments show up

5    again under the four-part test under either likelihood of

6    success or irreparability of harm.

7           But here's what I think I have to look for to decide

8    if Oregon Cattlemen has standing on the strength of one of its

9    members having standing, which is the core mechanism for Oregon

10   Cattlemen showing standing.  And I'll say at the outset that it

11   requires, I think, some degree of specificity.

12          So what I'm looking for is a member of Oregon

13   Cattlemen who will say, here are the 2020 regulations, and

14   there's a productive use of land that I want to take -- let's

15   say plowing a field -- and the regulation prohibits me from

16   plowing the field, and the regulation is unlawful for a variety

17   of reasons.  And so the thing I want to do -- plow this field

18   this summer or spring or next spring -- is prohibited by an

19   unlawful regulation.

20          And that's what I think I have to have for standing.

21   And the question raised here is do we have that.  And so I'm

22   going to set out what I think the main arguments are about

23   that, and then hear from you.

24          So defendants' position is that we do not have that.

25   The closest we get, the one probably most worth analyzing is

1   Mr. Martin, and what -- and so given the change in the

2   regulation, what we would now have to have is some productive

3   activity that cannot take place, not by virtue of the presence

4   of an ephemeral stream but of an intermittent stream.  And so

5   you'd have to have a farmer, a cattleman say, I want to plow X

6   field, and there's an intermittent stream on the field, and I

7   can't plow it because the regulation prohibits the thing I want

8   to do.  Here's how the regulation prohibits that, and I can't

9   do it.

10          Mr. Martin says something like that, and, in fact,

11  talks about the particular Baker County piece of property at

12  issue as having an intermittent stream in it, but what's

13  pointed out in the briefing is that the -- Mr. Martin's use of

14  the word "intermittent" is, I guess I'd say, idiosyncratic;

15  that he, taking his statement as a whole, we're not sure

16  anymore what he means by intermittent, whether he really is

17  getting at the 2020 regulatory definition or not.

18          In addition, the government at least suggests that to

19  really gain standing and, of course, later on to show

20  likelihood of success, you can't just deal with a portion of

21  the regulation.  You have to sort of show how the regulation,

22  taken as a whole, prohibits the productive activity that a

23  cattleman wants to engage in, and that nobody has picked up the

24  ways in which the superficial application of the regulation

25  would be erased by some sort of other permit or exemption or

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 6 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 7 of 58 - Page ID#: 2266

6

1   exception that would allow the productive activity to go

2   forward.  Absent that, no standing.

3          So that's the main question I'll have for Oregon

4   Cattlemen first is have you had the specificity, both factual,

5   in terms of what is someone really saying they want to do

6   that's forbidden by the regulation, and regulatory, that is,

7   have you really taken into account the whole regulation, not

8   just part of it in showing that you cannot do what you want to

9   do, such that you've gained standing.

10          I'll start with Cattlemen.

11          MR. FRANCOIS:  Thank you, Your Honor.

12          We would start by pointing to the supplemental

13   declaration of Curtis Martin, which is Docket No. 46,

14   paragraphs 2 and 3.  And in paragraph 2, he describes Gentry

15   Creek, which flows across his property and then flows, when it

16   does, to the Powder River.  And he explains in those two

17   paragraphs that Gentry Creek flows intermittently, but it is

18   also fed by ephemeral drainages, which are no longer regulated,

19   but that within the riparian zone of Gentry Creek, which he

20   describes as intermittent, he plows for planting crops roughly

21   every two years.  And that's in the beginning of his -- of

22   paragraph 3.

23          And he explains that plowing results in movement of

24   soil within the plowed area, and that the every-couple-of-years

25   interval for plowing, we explain in our briefing, does not

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 7 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 8 of 58 - Page ID#: 2267

7

1   appear to qualify for the narrow normal farming practices

2   (electronic feedback) in the way in which defendant Army Corps

3   interprets that.  And we provided some testimony from another

4   case as an attachment to my declaration, which explains how the

5   federal agencies interpret the farming exemption narrowly.

6          And so our argument simply is that Mr. Martin plows

7   in order to plant crops within an intermittent tributary on his

8   property, Gentry Creek.  We would say that his distinction

9   between Gentry Creek as an intermittent drainage and the

10  ephemeral drainages that feed it show that he's aware of the

11  distinction.  My recollection off the top is that those two

12  terms are similarly -- that they mean the same things from the

13  2105 to the 2020 regulation.  "Ephemeral" means flows only in

14  response to rainfall, "intermittent" means flows more than

15  that, and that the inference is easy to draw from his

16  declaration that Gentry Creek is an intermittent drainage, an

17  intermittent tributary.

18          THE COURT:  Do you have --

19          MR. FRANCOIS:  That's in his second declaration, Your

20  Honor.

21          THE COURT:  Do you have his first declaration handy?

22          MR. FRANCOIS:  I do.

23          THE COURT:  Well, the concerning language, I guess,

24  that's been brought up is paragraph 6 of his first declaration.

25  It's different land in which he says --

Case 3:19-cv-00564-AC    Document 110    Filed 10/27/20    Page 8 of 57
Case: 3:23-cv-00007-GFVT    Doc #: 57-1    Filed: 04/13/23    Page: 9 of 58 - Page ID#: 2268

8

1          MR. FRANCOIS:  That was describing a different --

2          THE COURT:  Right.  It's a different piece of land.

3   But there he says, "seasonal rainflow produces intermittent

4   springs and stream flow."  So that's the concern.  If that's

5   what he means by intermittent, which is what it appears he

6   means by intermittent, then he is describing when he uses the

7   word "intermittent" something that's ephemeral, right?

8          MR. FRANCOIS:  Well, he goes on to identify ephemeral

9   drainages in the same paragraph, Your Honor, and the definition

10  of "ephemeral" in the 2020 rule is that it flows only in

11  response to, and only in direct response to precipitation.  And

12  so we would think the inference that can be drawn from this

13  description is that what he describes as producing intermittent

14  springs and stream flow are different from the artificial

15  ephemeral ponds that catch and store rainwater, and that what

16  he's describing when he uses the term "intermittent" is within

17  the scope of the definition of "intermittent" in the 2020 rule.

18         THE COURT:  Well, I guess my first question is how do

19  I know that's what he means?  I mean, if I read his two

20  statements taken together, I don't know what he means by the

21  word "intermittent."  He uses it in a way that doesn't clearly

22  distinguish between intermittent and ephemeral springs and

23  stream flow.

24         MR. FRANCOIS:  He uses them in a way, though, Your

25  Honor, that draws a distinction between intermittent and

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 9 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 10 of 58 - Page ID#: 2269

9

1   ephemeral, and from that we would argue that what he is

2   describing are actually intermittent tributaries under the

3   definition in the rule.

4          THE COURT:  All right.  So let's assume that he's --

5   that he has factually described activity in his second

6   statement, second declaration that he would like to engage in

7   that is forbidden to him because it would impact an

8   intermittent stream.  Then the other argument you face from

9   defendant is that that's only part of the regulatory analysis

10  before you know whether he really is forbidden from doing what

11  he desires to do, and that you've got to dig a little deeper --

12  he has to dig a little deeper in order to make a case that he

13  actually is forbidden from the entirety of the regulatory

14  structure from doing what he wants to do.

15         Do you feel you've met that burden or that it even is

16  your burden?

17         MR. FRANCOIS:  Well, we do think we've established

18  facts that show because of the plowing interval is every couple

19  of years rather than annual and -- rather than annual, that the

20  plowing interval, as the Army Corps interprets the plowing

21  exception, which is the only -- Let me take one step back.  The

22  only part of the regulation that we are aware of that would

23  either exclude these features from regulation or would exclude

24  his activity from regulation is the normal farming practices

25  provision in Section 404(f)(1), and so we've offered the Court

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 10 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 11 of 58 - Page ID#: 2270

10

1    the Army Corps' interpretation of that interpretation -- of

2    that provision as narrow and as not applying to activities that

3    are not routinely done year after year.  And so we see two ways

4    that he's caught in this.  Either it's -- either it clearly

5    doesn't apply or in order to determine if it applies, he has to

6    go through the same -- the kind of permitting process that

7    would cause him irreparable harm that having to get a

8    jurisdictional determination of the (indiscernible) would

9    cause.  He's got to expend time and money on consultants and

10   delay with the agency to get their opinion of whether or not

11   the exemption applies.

12          As of the application of that exemption and the

13   agreement of that by the Army Corps, his plowing is at the risk

14   of being enforced against, and that's the experience, for

15   example, of the *LaPant* and *Duarte Nursery* cases that we've

16   cited.

17          THE COURT:  I'm going to come back to this consultant

18   fee issue later, but let's start with defense.  Start with the

19   proposition that Mr. Martin is a member of the association

20   whose allegation of imminent harm or injury for standing

21   purposes is that there is something he wants to do -- plow this

22   field -- that he is forbidden to do by this regulation, and the

23   regulation is unlawful and therefore he has standing.

24          What's your response to that, given what you've just

25   heard?

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 11 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 12 of 58 - Page ID#: 2271

11

1    MR. BRIGHTBILL:  Thank you, Your Honor.  Jonathan

2 Brightbill from the Justice Department.

3    You've put your finger on one of two really

4 significant issues with the standing of the association here

5 and as applied to its member, which is first of all that based

6 on the declarations that you have before you, there is a

7 definitional problem, Your Honor, between how they're using the

8 term "intermittent," how the regulation has applied

9 intermittent for purposes of the Navigable Waters Protection

10 Rule, and even, Your Honor, how the *Rapanos* plurality -- and I

11 realize this is a merit decision and we're going to get to

12 this -- whether there's even a material difference between how

13 the *Rapanos* plurality defines the term "intermittent" or

14 doesn't define or rather expressly describes what it means by

15 the term "intermittent," and how those things are different

16 from the basis for the declarations and the standing of the --

17 of Mr. Martin here.

18    So there's that definitional problem, Your Honor,

19 which you're exactly correct about, that his use of the term

20 "intermittent" seems to correspond with what the agencies have

21 defined for purposes of the Navigable Waters Protection Rule as

22 ephemeral flow, which is affirmatively not covered by the

23 Navigable Waters Protection Rule.

24    But it goes further, Your Honor.  I actually think

25 that the problem with the -- with declarant's standing becomes

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 12 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 13 of 58 - Page ID#: 2272

12

1    even more apparent when you -- when you compare the earlier
2    declarations with the later declaration, because let's remember
3    it's not only injury, it's injury fairly traceable to the
4    regulation that they're trying to challenge, so the Navigable
5    Waters Protection Rule and how that changes or doesn't change
6    the baseline regulation that he's subject to and that is
7    redressable by enjoining the Navigable Waters Protection Rule,
8    and if there's something new that the Navigable Waters
9    Protection Rule layers on.  In order to establish injury that's
10   redressable, he needs to establish that stopping that would
11   relieve him of that burden, Your Honor.

12            And actually, if you go back and you look at the
13   specificity of the allegations that were put forth in order to
14   establish standing to challenge the 2015 rule, it is absent,
15   Your Honor, with respect to any allegation as to the Navigable
16   Waters Protection Rule.  And I think that is, Your Honor,
17   because he doesn't have standing.  They couldn't make those
18   allegations as to Navigable Waters Protection Rule layering on
19   additional harm.

20            And I can point you to that specifically, Your Honor.
21   If you look at his original declaration, and the --
22   Mr. Martin's original declaration, he speaks in paragraph 9 of
23   the declaration -- so he sets up in paragraph 5 and 6 the
24   different areas.  Right?  But if you go to paragraph 9 of his
25   original declaration, it says, "The 2015 navigable waters

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 13 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 14 of 58 - Page ID#: 2273

13

1   definition lacks sufficient clarity and is riddled with

2   ambiguity, based on the use of a complex significant nexus test

3   to make case-by-case determinations of whether water features

4   like those on the property I own or manage are subject to Clean

5   Water Act regulation," Your Honor.

6          So the harm to Mr. Martin was alleged, and the

7   connection that he was alleging was I have these features in my

8   property.  Due to the 2015 rule, I now don't know what to do

9   with them, Your Honor, because it's ambiguous.  There's the

10  significant nexus test.  I don't know how far it reaches.  And

11  he makes allegations about what he has to do to find that out.

12         If you now look, Your Honor, at Mr. Martin's new

13  declaration, supplemental declaration that was filed in --

14  later on, there is no similar statement that an aspect of the

15  Navigable Waters Protection Rule is causing him harm, ergo with

16  no allegation that there's something in the Navigable Waters

17  Protection Rule that's causing him harm, that's causing him to

18  do something, there's also by extension no redressability here,

19  Your Honor.  He hasn't even established that the Navigable

20  Waters Protection Rule would cause and is causing him to do

21  anything (indiscernible).

22         There's a similar dichotomy if you compare the

23  original declaration of Mr. Rosa with the supplemental

24  declarations of Mr. Rosa, where he originally makes a

25  statement -- if you go to Mr. Rosa's original declaration,

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 14 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 15 of 58 - Page ID#: 2274

14

1   paragraph 4, "Should the final rule of the definition of waters

2   of the United States under the Clean Water Act, the 2015

3   Navigable Waters Rule be allowed to take effect, a significant

4   number of OCA members will be required to seek Clean Water Act

5   Section 404 permits for projects on or adjacent to waters and

6   land features not previously subject to Environmental

7   Protection Agency or U.S. Army Corps of Engineers

8   jurisdiction."

9          There again, Your Honor, there is not a similar

10  allegation of connection between the Navigable Waters

11  Protection Rule of 2020 and any change in the regulatory

12  baseline, Your Honor.  And that's because, Your Honor, at the

13  end of the day, what the agency did to the Navigable Waters

14  Protection Rule was to use more objective criteria to draw

15  clearer lines that were tied to the presence of groundwater

16  rather than rainwater, which is the emphasis of the

17  declarations that you have before you.  And those waters that

18  are driven by rain flow, Your Honor, are actually excluded in

19  the Navigable Waters Protection Rule.

20         Now, many of those waters are ultimately picked up by

21  state regulation and other things so that the net environmental

22  impact of the Navigable Waters Protection Rule is not

23  significantly different once the federal authority is tied

24  together in light of state authority.  But for purposes of this

25  plaintiff's standing to challenge the regulation at issue, what

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 15 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 16 of 58 - Page ID#: 2275

15

1    we need to look at is whether or not the regulation at issue is

2    causing them harm, causing them to have to undertake a new

3    regulation that they weren't previously subject to, and those

4    allegations are not in the declarations that you have, Your

5    Honor.

6              THE COURT:   Thank you.

7              I want to ask a question about your brief at page 28.

8    So admittedly this page is about irreparable -- this page is

9    about irreparable harm being premature, but the argument that

10   you make appears to me to be the same argument you'd make on a

11   standing question, having to do with the imminence of the harm.

12   And you suggest on the bottom sentence of page 28, bottom

13   sentence of text, "For instance, plaintiff fails to address

14   whether the activities in question, even if involving a water

15   of the United States under the NWPR would be subject to an

16   exemption for certain ranching or farming activities.  As a

17   result, I cannot conclude that the members are harmed by it,

18   let alone that it's irreparable harm."

19             You've heard the contrary position by Cattlemen's

20   Association today that they're really -- that they've knocked

21   down any potential exemption that would be applicable on these

22   facts.  What's your position on that?

23             MR. BRIGHTBILL:  Well, Your Honor, we don't know --

24   from these declarations, we don't know (indiscernible).

25             THE COURT:  I'm going to stop you there.  I'm going

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 16 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 17 of 58 - Page ID#: 2276

16

1    to stop you there for just a moment because you're not coming

2    through very well.  Maybe get closer to your phone.  There you

3    go.

4              MR. BRIGHTBILL:  Can you hear me any better now, Your

5    Honor?

6              THE COURT:  No.  Hang on a second.

7              It's been described as someone who is talking

8    underwater.

9              MR. BRIGHTBILL:  Can you hear me now, Your Honor?

10   Can you hear me now, Your Honor?

11             THE COURT:  Better.

12             MR. BRIGHTBILL:  Better.  Okay.  All right.  I'll try

13   to speak up, Your Honor.

14             So -- all right.  So is that better or worse?

15             THE COURT:  Better.

16             MR. BRIGHTBILL:  Better.  Okay.  All right.

17             So the answer is, Your Honor, we don't have enough

18   facts to know, because there is a farming exemption.  A farming

19   exemption is tied to whether or not the individual in question

20   has been using the property in that manner for a certain number

21   of years, Your Honor.  And they haven't presented facts that

22   would allow us to know, other than there are certain claims

23   that this gentleman has been doing this since -- there were

24   references to irrigating the property with water going back

25   to -- water rights going back to 1876.  This seems to be a

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 17 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 18 of 58 - Page ID#: 2277

17

1    property that has been farmed or ranched for a very long period

2    of time, Your Honor, so I would say that the circumstantial

3    evidence, so to speak, that we can draw something like that out

4    of these declarations, because they are very bare bones, would

5    indicate that these properties have been used for farming and

6    ranching activities for an extended period of time, and it

7    would suggest that they do qualify for that exemption, but we

8    simply don't know, Your Honor, and that's one of the reasons

9    why we made that point that you referred to in our brief, Your

10   Honor.

11            THE COURT:  I'd like to come back to Cattlemen's now

12   with a separate question I said I'd pick up later.  Throughout

13   your briefing, and actually in what I'll call both cases, the

14   2015 challenge and the 2020 challenge, you take the position

15   that one of the ways you can assert irreparable harm and

16   standing is to show that -- I'm going to use two hypothetical

17   plaintiffs.  In your view, they're identical, I think.

18            So one hypothetical plaintiff is someone who wants to

19   plow a certain meadow and cannot do it because the regulation

20   forbids it, and therefore loses the productive use of that

21   land, according to his allegations, and has harm and alleges

22   that the harm flows from a regulation that is sort of ultra

23   vires of the statute itself.  That's Plaintiff A.

24            And to some degree, that's the case you want to make

25   for Mr. Martin, right?

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 18 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 19 of 58 - Page ID#: 2278

18

1          MR. FRANCOIS:  Yes, Your Honor.

2          THE COURT:  But you also assert sort of a Plaintiff

3    B, and maybe Mr. Martin in some ways is both.  But Plaintiff B

4    is someone who wants to plow a meadow and says he isn't sure

5    whether he can plow the meadow or not, and that to figure out

6    whether he can or can't, he'd have to spend a lot of money to

7    know whether the law forbids or permits what he wants to do in

8    consulting fees and otherwise, and that the cost of doing that

9    is prohibitive.

10         There's no specific showing, but let's imagine that

11   the cost is high enough that it would make even a success --

12   that is, getting permission to do so -- quite a bit less

13   profitable, maybe unprofitable.  And so because the cost is so

14   high, Plaintiff B just doesn't do it.

15         In your view, are those two people on the same

16   footing with regards to standing and, for that matter,

17   irreparability of the harm?

18         MR. FRANCOIS:  That's a good question, Your Honor.

19   Let me do my best to answer it.  And I'll add that for

20   Plaintiff B, when Plaintiff B obtains the permit after the time

21   and cost, the permit restricts the use of the property.  And

22   then so the outcome of the process through which Plaintiff B

23   goes is a reduction in the ability to use the property.

24         THE COURT:  Sure.  If we get a Plaintiff B who goes

25   through the process and is denied, then he's now on the same

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 19 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 20 of 58 - Page ID#: 2279

19

1   footing as Plaintiff A, right?  He can't do it, and he's going

2   to sue and say, I can't do it.

3           MR. FRANCOIS:  Yes, Your Honor.

4           THE COURT:  I'm talking about ex ante.  Before he

5   goes, he says, I can't go without spending a ton of money,

6   therefore spending a ton of money is prohibitive, practically

7   speaking, so I'm not going to do it and I'm going to sue.  Is

8   he in the same footing as Plaintiff A?

9           MR. FRANCOIS:  Yes, in this respect:  Under the 2015

10  rule, there was this case-by-case determination that could be

11  made, and that was the -- of whether or not the water feature

12  was regulated.  And so in dealing with this, we have to

13  distinguish or recognize that there's two things that are

14  regulated.  One is the geography of the water feature and then

15  the next is the activity.

16          THE COURT:  Right.

17          MR. FRANCOIS:  And so the discussion of the farming

18  activities provision deals with that second part, the activity.

19          So under the 2015 regulation, there was a possibility

20  that for certain tributaries, the Plaintiff B would have to go

21  through a lengthy and expensive process to determine whether or

22  not the rule applied.

23          That's not the case anymore with the 2020 regulation,

24  as the agencies advertised.  Now there is categorical

25  regulation of all intermittent tributaries.  And so one of the

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 20 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 21 of 58 - Page ID#: 2280

20

1    things that we would have thought in their assessment of

2    Mr. Martin and Mr. Rosa's declaration is that actually, as the

3    agencies advertise, they can tell what's intermittent and

4    what's ephemeral in the ordinary case, and the rule is clear in

5    that regard.  Whether or not the -- so we think that Plaintiff

6    B, as far as whether the geography is regulated, collapses into

7    Plaintiff A.  There's no difference between them.

8              THE COURT:  Okay.

9              MR. FRANCOIS:  When it comes to whether the activity

10   is regulated, the question is whether this exemption applies,

11   and as to that exemption, we would want to clarify one thing in

12   our prior statement about that.  So the law is that it is the

13   burden of the regulated party to prove the applicability of the

14   exemption, for example, in an enforcement action.  So if you're

15   the defendant --

16             THE COURT:  I want to stop you there for just a

17   minute because I don't want to get off track.  That's actually

18   not my question, and in fact that question would apply equally

19   to my hypothetical Plaintiff A and Plaintiff B.  My real

20   question -- Let me ask it this way.  Let's take Plaintiff B.

21   He says, I'm just not going to do it because it's too

22   expensive.  I'm going to act like someone who is forbidden from

23   doing it because finding out whether I'm forbidden or not will

24   cost me a ton of money, and so I'm going to sue, saying the

25   regulation is invalid.

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 21 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 22 of 58 - Page ID#: 2281

21

```
 1              Let's imagine at the end of the day that Plaintiff B
 2   wins.  Can Plaintiff B recover the consulting fees and damages?
 3              MR. FRANCOIS:  No, not under any theory we're aware
 4   of, Your Honor.
 5              THE COURT:  So the consulting fees don't constitute,
 6   in like manner, any harm that's recognizable in looking at
 7   irreparable harm, right?
 8              MR. FRANCOIS:  Well, we would argue it is harm and
 9   it's precisely irreparable harm because those costs cannot be
10   recovered.
11              THE COURT:  But my concern, then --
12              MR. FRANCOIS:  I mean --
13              THE COURT:  My concern is this, that it's a sort of a
14   can of worms concern, I'll be candid with you, that we're now
15   talking about a hypothetical plaintiff whose real issue is he
16   doesn't know whether the law forbids or permits what he wants
17   to do, and finding out is going to cost him money.  And that's
18   the gravamen of his complaint about the regulatory scheme.
19   Isn't that true of millions of people with, say, the tax code?
20   They don't know whether they do or don't have to pay or can or
21   cannot claim an exemption.  To find out, it's too complicated
22   for them to find out, they've got to pay somebody to find out.
23   I just don't want to open the door to the idea that those
24   people are sitting on standing and irreparable harm by virtue
25   of having to get help to figure out whether a complex law
```

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 22 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 23 of 58 - Page ID#: 2282

22

1    applies to them or not.

2          Why is paying to get help to figure out whether a

3    complex law applies to your clients any kind of harm?

4          MR. FRANCOIS:  Well, Your Honor, we would point to a

5    couple of things that would, we think, cabin the necessary

6    finding of harm here to the Clean Water Act context.  And this

7    is an argument by analogy, we'll recognize that up front.

8          But in the context of whether or not an APA claim is

9    ripe, where an actual jurisdictional determination is being

10   challenged, the Supreme Court has said in both the *Sackett* case

11   and subsequently in the *Hawkes* case that the requirement to go

12   and figure out the answer is an adequate legal consequence to

13   satisfy the *Bennett v. Spear* test and give that plaintiff

14   standing.

15         THE COURT:  I see.

16         MR. FRANCOIS:  We would analogize to the -- this

17   situation is a little different, but we would certainly think

18   that the allegations in Mr. Martin and Mr. Rosa's

19   declaration -- and we would point to paragraph 15 of Mr. Rosa's

20   third declaration -- show that the terrain features are

21   actually regulated that they describe, the intermittent

22   drainages, and that the application of the -- of any exemption

23   would be their burden to show if they were enforced against,

24   because we think that where we're at now, it's not their burden

25   to show that it doesn't apply.

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 23 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 24 of 58 - Page ID#: 2283

23

1           THE COURT:  All right.  And so in your view,

2    ultimately my hypothetical Plaintiff A, which is Mr. Martin,

3    and my hypothetical Plaintiff B are functionally the same.  One

4    can't do it, and one views himself as unable to do it without

5    paying a ton of money and feels like that gives him

6    functionally the same right to sue as Plaintiff A, correct?

7           MR. FRANCOIS:  I would agree with that, Your Honor.

8    But we do think that Mr. Martin is Plaintiff A.

9           THE COURT:  I understand that.  Thank you.

10          And on this limited question about -- because there's

11   been quite a bit of briefing about Plaintiff B, I'm just

12   curious on the government's position about whether someone like

13   Plaintiff B has standing at all.

14          MR. BRIGHTBILL:  No, Your Honor.  You cannot

15   manufacture injury by virtue of engaging in -- in the

16   activities -- first of all, for the association itself, by

17   engaging in the activities for which it's been created.  But

18   then as to this individual, we cite the cases in our brief,

19   Your Honor, for this question of going and assessing whether or

20   not you have an injury.  It's their burden, Your Honor, so if

21   they have an injury and they can allege an injury or establish

22   an injury, then they need to state and establish the facts that

23   make that injury.  But they can't say that they're going to

24   have an injury by virtue of, oh, I want to go out and hire a

25   consultant to do this, Your Honor.  And you put your finger

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 24 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 25 of 58 - Page ID#: 2284

24

1  again spot on the relevant analogy here.  Otherwise we would be

2  manufacturing standing all over the place with respect to laws.

3       THE COURT:  Are you familiar with the APA cases cited

4  by Cattlemen's?

5       MR. BRIGHTBILL:  It's just different, Your Honor, and

6  I think Mr. Francois acknowledged that, because what we're

7  conflating there is the question of whether or not there has

8  been an action taken by an administrative agency that's

9  sufficient to constitute a final agency action, Your Honor.

10 But even if there has been an action, Your Honor, that's

11 different from the question of whether an individual plaintiff

12 has established their burden of showing an injury, and not just

13 the injury, the hypothetical injury, Your Honor, but that it's

14 fairly traceable, i.e., caused by the regulation at issue and

15 the regulatory change at issue, Your Honor.  That's the real

16 key here.

17       Again, it's a baseline question, Your Honor.  They

18 allege consistently and going back to the 2015 rule, but

19 ultimately the 2015 rule is, in many respects, an extension of

20 and a limitation of a variation of the significant nexus regime

21 that predated it, Your Honor.  And that significant nexus

22 question, whether ensconced in the 2015 rule or grafted onto

23 the 1986 regulations by virtue of the *Rapanos* decision and its

24 interpretation and application of the limits therein

25 thereafter, first by Ninth Circuit decision but then by the

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 25 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 26 of 58 - Page ID#: 2285

25

1    agencies themselves once they repealed the 2015 rule and

2    reenacted the '86 rules, which expressly when they did so

3    referenced and incorporated the principles of the *Rapanos* and

4    other Supreme Court precedence.  That is the regulatory

5    baseline, Your Honor, is this significant nexus of regime that

6    they are saying causes them the regulatory uncertainty, Your

7    Honor.  And we're not moving away to a place where they have

8    more regulatory uncertainty, which is the crux of the injury

9    that they're referencing and that you're making reference to,

10   Your Honor.  To the contrary -- and I think Mr. Francois very

11   candidly referred to it earlier -- the new rule is actually

12   much more clear and definitive in terms of objective criteria

13   as to what is covered and what is not covered, as opposed to

14   this multifactor balancing test that is and was the significant

15   nexus analysis.

16             THE COURT:  All right.  Thank you.

17             I want to come back to Cattlemen's one further time

18   on this standing question.  Could you turn to your supplemental

19   declaration of Mr. Martin again.

20             MR. FRANCOIS:  Yes, Your Honor.

21             THE COURT:  So I've expressed earlier my concern that

22   when I read the two declarations together, I don't know what

23   Mr. Martin means by the word "intermittent," and that that's a

24   real concern for me if we don't make a clear distinction there

25   in what he means, because clearly a concern that plowing land

Case 3:19-cv-00564-AC    Document 110    Filed 10/27/20    Page 26 of 57
Case: 3:23-cv-00007-GFVT  Doc #: 57-1  Filed: 04/13/23  Page: 27 of 58 - Page ID#: 2286

26

1  crossed by an ephemeral stream of some kind gets in the way of
2  the regulations here wouldn't work.
3          So what I see is that in paragraph 2, he describes
4  Gentry Creek as an intermittent tributary on his North Powder
5  property, and then he describes Gentry Creek as something that
6  also received ephemeral flows from draws and gullies before it
7  flows into the Powder River, all on his property.
8          And then in paragraph 3, he says, "I farm in the
9  riparian zone of Gentry Creek on my Baker County property."
10          Why wouldn't I read that to say he's farming in the
11  entire area covered by the ephemeral flows from draws and
12  gullies, and then I wouldn't know whether he's going to plow
13  through an ephemeral flow or through Gentry Creek or through
14  both or through something else?
15          MR. FRANCOIS:  So, Your Honor, if you look at
16  Exhibit A to Mr. Martin's supplemental declaration, it's an
17  image from Google Earth that he references in paragraph 2.
18          THE COURT:  I have that.
19          MR. FRANCOIS:  And he says that -- he says that
20  Gentry Creek is indicated by the tree line.  And so if you look
21  at the green part of the property there, and you see a tree
22  line moving across part of it, and so one of the reasons we
23  think that this supports the inference that that is
24  intermittent rather than ephemeral is that it's far more likely
25  that there would be trees growing along part of that drainage

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 27 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 28 of 58 - Page ID#: 2287

27

1    if it were intermittent rather than if it only flowed in direct

2    response to precipitation.  You see that the tree line is

3    discontinuous.  That would be appear to be a portion of the

4    property that he would plow through.

5         THE COURT:  That's not quite my question, though.

6         MR. FRANCOIS:  We would argue that there's enough

7    information there to easily draw the inference that he is

8    describing a drainage that flows more than just in direct

9    response to precipitation.

10         THE COURT:  Here's my real question.  If I say on my

11   property I have an intermittent stream and it's fed by

12   ephemeral streams, and that's all on my property, and I farm

13   that property, then how do I know whether the farming I want to

14   do is getting in the way of the ephemeral streams or the

15   intermittent stream or which?  He's really said, I've got an

16   intermittent stream fed by ephemeral streams, and that's the

17   property I farm.

18         I don't know from that whether he's more worried

19   about plowing over an intermittent stream or an ephemeral gully

20   or what, given what he has said in paragraph 3, when he says,

21   "I farm the riparian zone of Gentry Creek."  That's not saying,

22   I farm over Gentry Creek.  It's saying, I farm in the whole

23   area which I just described as including ephemeral streams.

24         MR. FRANCOIS:  So then again looking at Exhibit A,

25   Your Honor, the --

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 28 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 29 of 58 - Page ID#: 2288

28

1           THE COURT:  Exhibit A doesn't tell me which part of
2      that he wants to farm.
3           MR. FRANCOIS:  Well, I would argue that it provides
4      some information as to that, though, Your Honor, because in
5      paragraph 2, he says it receives ephemeral flows from draws and
6      gullies, and so the likelihood that he would be -- and then
7      looking at paragraph -- or excuse me, at Exhibit A, the uplands
8      there that are brown, where the draws and gullies clearly are,
9      you would not expect him to be working farm equipment up there
10     on that kind of terrain.  But down below, where it's flat and
11     green and you've got the tree line running across it, that's a
12     place where you would reasonably expect him to be using farm
13     equipment and plowing.  So the information is there, we think,
14     to draw a reasonable inference with -- generally on the
15     question of jurisdiction, inferences will be drawn in favor of
16     the plaintiff.  There's enough information there to conclude
17     that he farms in what the new rule would categorize as
18     intermittent drainage.
19          THE COURT:  Well, it's a lot of guesswork, I'm
20     afraid.  You know, it's the sort of thing where I think if he
21     had phrased it right, we wouldn't be in this position.  But
22     you're asking me not to draw inferences but to guess.  If I
23     were going to guess -- which I'm not going to -- then I'd be
24     guessing that no farmer is going to plow right up to a line of
25     trees and a stream next to a line of trees, and so therefore

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 29 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 30 of 58 - Page ID#: 2289

29

1    he's not really worried about Gentry Creek.  But I'm not going

2    to make that guess.  I'm simply going to say that what I have

3    here is a case that has evolved from one set of -- one

4    regulation to another, but evolved insufficiently to account

5    for the new lay of the land, and that I don't have standing.  I

6    don't have anybody -- Mr. Martin is the only one who comes

7    close -- who tells me enough to know that the injury is

8    imminent.

9        And so I find that because of that, because of the

10    failure to meet the standing requirements for associational

11    standing, also just for Mr. Martin, his own statements failing

12    to meet the *Winter/Alliance for Wild Rockies* test for his own

13    standing, that I just don't have standing in this case.

14        Some of those same questions I think probably --

15    Well, I don't know.  At least a good chance, a shot at being

16    curable.  Some of them get at irreparable harm as well.  I

17    don't want to make any further rulings beyond standing, other

18    than to provide the parties this much guidance.  There's a lot

19    of confusion and fighting about the precedential holding of

20    *Rapanos* and what that means in the Ninth Circuit.  And if I

21    track the parties through their various nuanced and interesting

22    arguments about cases and what pluralities really mean and how

23    to apply, you know, the latest test for reading pluralities,

24    I'm still left at the end of the day with *Robertson* being at

25    worst for plaintiff here downgraded from binding authority to

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 30 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 31 of 58 - Page ID#: 2290

30

1    persuasive authority, and plaintiff would then still face the

2    significant hurdle of, I assume, facing a Ninth Circuit panel

3    who would be reading its own panel opinion as -- a panel

4    opinion from its own circuit as persuasive authority on the

5    subject, making likelihood of success on the merits low.  So

6    we'd have to deal with that question as well.

7          I guess what I'm saying is when we get to the end of

8    the analysis, if this comes back in a guise that has standing,

9    I am definitely going to analyze the precedential holding of

10   *Rapanos* as requiring a future panel of the Ninth Circuit to

11   read *Robertson* as persuasive authority, and that's going to

12   mean a lot, but I'm going to assume that a panel of the Ninth

13   Circuit is going to not feel bound but feel persuaded by the

14   way in which *Robertson* says we should read *Rapanos*.

15         I'll leave that for a future day, but I wanted to

16   save the parties, if we get that far, dozens of pages of

17   briefing about *Rapanos* again.

18         So I don't feel that there's standing here.  I don't

19   need to hear from intervenor for that reason.  I do believe

20   it's the sort of case that that issue might be curable, but I

21   am dismissing the case for lack of standing, but without any

22   prejudice to try again.

23         Can I answer any questions from plaintiff first about

24   that?

25         MR. FRANCOIS:  Thank you, Your Honor.

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 31 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 32 of 58 - Page ID#: 2291

31

1            So if the Court dismisses without prejudice, we would

2    have leave to file an amended pleading that addressed the

3    standing allegations based on today's hearing?

4            THE COURT:  Yes, exactly.  Thank you.

5            MR. FRANCOIS:  Thank you, Your Honor.

6            THE COURT:  For the defendant, any further questions?

7            MR. BRIGHTBILL:  No, Your Honor.  Thank you.

8            THE COURT:  Thank you all.  We'll be in recess.

9            MR. FRANCOIS:  Can I just ask quickly, Your Honor?

10           THE COURT:  Yes.

11           MR. FRANCOIS:  Will the Court set a deadline within

12    which any amended pleading would be filed?

13           THE COURT:  No.  I assume if you're really

14    interested, you'll move it forward.

15           MR. FRANCOIS:  Thank you, Your Honor.

16           THE COURT:  Thank you.  We'll be in recess.

17           THE COURTROOM DEPUTY:  Court is in recess.

18           (Proceedings concluded at 3:01 p.m.)

19

20

21

22

23

24

25

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 32 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 33 of 58 - Page ID#: 2292

32

1

2                                      --o0o--

3

4          I certify, by signing below, that the foregoing is a

5    correct transcript of the record of proceedings in the

6    above-entitled cause.  A transcript without an original

7    signature or conformed signature is not certified.

8

9
     /s/Bonita J. Shumway                   October 14, 2020
10   _____                _____
     BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
11   Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 33 of 57
Case: 3:23-cv-00007-GFVT   Doc #: 57-1   Filed: 04/13/23   Page: 34 of 58 - Page ID#: 1293
3:19-cv-564-AC [1]

MR.
BRIGHTBILL:
[10]  3/12 10/25
15/22 16/3 16/8
16/11 16/15 23/13
24/4 31/6
MR. FRANCOIS:
[31]  3/8 6/10 7/18
7/21 7/25 8/7 8/23
9/16 17/25 18/17
19/2 19/8 19/16
20/8 21/2 21/7
21/11 22/3 22/15
23/6 25/19 26/14
26/18 27/5 27/23
28/2 30/24 31/4
31/8 31/10 31/14
MS. SEWELL: [1]
3/14
THE COURT: [40]

THE
COURTROOM
DEPUTY: [2]  3/2
31/16

'
'86 [1]  25/2

-
--o0o [1]  32/2

/s/Bonita [1]  32/9

1
1000 [2]  2/16 2/22
1001 [1]  2/16
14 [1]  32/9
15 [1]  22/19
1876 [1]  16/25
1986 [1]  24/23

2
20001 [1]  2/16
2015 [11]  12/14
 12/25 13/8 14/2
 17/14 19/9 19/19
 24/18 24/19 24/22
 25/1
2020 [11]  1/6 3/2
 4/13 5/17 7/13 8/10
 8/17 14/11 17/14
 19/23 32/9
20530 [1]  2/11
2105 [1]  7/13
2133 [1]  2/11
28 [2]  15/7 15/12
2:11 [1]  3/2

3
301 [1]  2/22
326-8188 [1]  2/23
3:01 [1]  31/18
3:19-cv-00564-AC
 [1]  1/4
3/5

4
404 [2]  9/25 14/5
46 [1]  6/13

5
503 [1]  2/23

6
610 [1]  2/19

8
810 [1]  2/19
8188 [1]  2/23

9
930 [1]  2/6
950 [1]  2/11
95814 [1]  2/6
97204 [1]  2/22
98104 [1]  2/19

A
ability [1]  18/23
about [21]  4/1 4/22
 5/11 11/19 13/11
 15/7 15/8 15/9 19/4
 20/12 21/15 21/18
 23/10 23/11 23/12
 27/19 29/1 29/19
 29/22 30/17 30/23
above [1]  32/6
above-entitled [1]

**A**

above-entitled... [1] 32/6
absent [2] 6/2 12/14
AC [2] 1/4 3/5
according [1] 17/21
account [2] 6/7 29/4
acknowledged [1] 24/6
across [3] 6/15 26/22 28/11
act [5] 13/5 14/2 14/4 20/22 22/6
action [4] 20/14 24/8 24/9 24/10
activities [7] 10/2 15/14 15/16 17/6 19/18 23/16 23/17
activity [8] 5/3 5/22 6/1 9/5 9/24 19/15 19/18 20/9
actual [1] 22/9
actually [10] 9/2 9/13 11/24 12/12 14/18 17/13 20/2 20/17 22/21 25/11
add [1] 18/19
addition [1] 5/18
additional [1] 12/19
address [1] 15/13

addressed [1] 31/2
adequate [1] 22/12
adjacent [1] 14/5
administrative [1] 24/8
admittedly [1] 15/8
advertise [1] 20/3
advertised [1] 19/24
affirmatively [1] 11/22
afraid [1] 28/20
after [2] 10/3 18/20
afternoon [1] 3/9
again [9] 3/23 4/5 14/9 24/1 24/17 25/19 27/24 30/17 30/22
against [2] 10/14 22/23
agencies [6] 3/14 7/5 11/20 19/24 20/3 25/1
agency [7] 1/6 3/7 10/10 14/7 14/13 24/8 24/9
agree [2] 3/21 23/7
agreement [1] 10/13
al [2] 1/6 3/7
all [16] 3/18 3/20 9/4 11/5 16/12

16/14 16/16 19/25 23/1 23/13 23/16 24/2 25/16 26/7 27/12 31/8
allegation [4] 10/20 12/15 13/16 14/10
allegations [7] 12/13 12/18 13/11 15/4 17/21 22/18 31/3
allege [2] 23/21 24/18
alleged [1] 13/6
alleges [1] 17/21
alleging [1] 13/7
Alliance [2] 3/23 29/12
allow [2] 6/1 16/22
allowed [1] 14/3
alone [1] 15/18
along [1] 26/25
also [6] 3/25 6/18 13/18 18/2 26/6 29/11
am [2] 30/9 30/21
ambiguity [1] 13/2
ambiguous [1] 13/9
amended [2] 31/2 31/12
analogize [1] 22/16
analogy [2] 22/7 24/1

**A**

analysis [3]  9/9
25/15 30/8
analyze [1]  30/9
analyzing [2]  3/24
4/25
Anna [2]  2/15 3/15
annual [2]  9/19
9/19
another [2]  7/3
29/4
answer [4]  16/17
18/19 22/12 30/23
ante [1]  19/4
Anthony [1]  2/4
any [13]  12/15
14/11 15/21 16/4
21/3 21/6 22/3
22/22 29/17 30/21
30/23 31/6 31/12
anybody [1]  29/6
anymore [2]  5/16
19/23
anything [1]  13/21
APA [2]  22/8 24/3
apparent [1]  12/1
appear [2]  7/1 27/3
APPEARANCES
[1]  2/2
appears [2]  8/5
15/10
applicability [1]

applicable [1]
15/21
application [4]  5/24
10/12 22/22 24/24
applied [3]  11/5
11/8 19/22
applies [6]  3/24
10/5 10/11 20/10
22/1 22/3
apply [4]  10/5
20/18 22/25 29/23
applying [1]  10/2
appreciate [1]  3/19
are [27]  3/18 4/13
4/22 6/18 7/12 8/14
9/2 9/22 10/3 11/15
13/4 14/18 14/18
14/20 15/4 15/17
16/22 17/4 18/15
19/13 21/24 22/20
23/3 24/3 25/6 28/8
28/8
area [3]  6/24 26/11
27/23
areas [1]  12/24
argue [4]  9/1 21/8
27/6 28/3
argument [6]  3/5
7/6 9/8 15/9 15/10
22/7
arguments [3]  4/4

Army [5]  7/2 9/20
10/1 10/13 14/7
artificial [1]  8/14
as [41]
ask [3]  15/7 20/20
31/9
asking [1]  28/22
aspect [1]  13/14
assert [2]  17/15
18/2
assessing [1]  23/19
assessment [1]  20/1
association [7]  1/3
3/6 3/10 10/19 11/4
15/20 23/16
associational [2]
4/1 29/10
assume [4]  9/4 30/2
30/12 31/13
attachment [1]  7/4
August [2]  1/6 3/2
authority [6]  14/23
14/24 29/25 30/1
30/4 30/11
Ave [1]  2/22
Avenue [2]  2/11
2/19
aware [3]  7/10 9/22
21/3
away [1]  25/7

**B**

Baker [2]  5/11 26/9
balancing [1]  25/14
bare [1]  17/4
based [3]  11/5 13/2
 31/3
baseline [4]  12/6
 14/12 24/17 25/5
basis [1]  11/16
be [27]  5/25 8/12
 14/3 14/4 15/10
 15/15 15/21 16/25
 19/10 21/9 21/14
 22/23 24/1 26/25
 27/3 27/3 28/6 28/9
 28/12 28/15 28/21
 28/23 30/3 30/20
 31/8 31/12 31/16
because [23]  5/7
 9/7 9/18 12/2 12/17
 13/9 14/12 16/1
 16/18 17/4 17/19
 18/13 20/17 20/21
 20/23 21/9 22/24
 23/10 24/6 25/25
 28/4 29/9 29/9
becomes [1]  11/25
been [10]  7/24 16/7
 16/20 16/23 17/1
 17/5 23/11 23/17
 24/8 24/10
before [6]  1/17 9/10

26/6
beginning [1]  6/21
behalf [1]  3/15
being [6]  3/18
 10/14 15/9 22/9
 29/15 29/24
believe [1]  30/19
below [2]  28/10
 32/4
Bennett [1]  22/13
best [1]  18/19
better [6]  16/4
 16/11 16/12 16/14
 16/15 16/16
between [7]  7/9
 8/22 8/25 11/7
 11/12 14/10 20/7
beyond [1]  29/17
binding [1]  29/25
bit [2]  18/12 23/11
bones [1]  17/4
Bonita [3]  2/21
 32/9 32/10
both [5]  6/4 17/13
 18/3 22/10 26/14
bottom [2]  15/12
 15/12
bound [1]  30/13
brief [3]  15/7 17/9
 23/18
briefing [6]  3/19

23/11 30/17
Brightbill [3]  2/9
 3/13 11/2
Brimmer [2]  2/18
 3/17
brought [1]  7/24
brown [1]  28/8
burden [8]  9/15
 9/16 12/11 20/13
 22/23 22/24 23/20
 24/12

**C**

CA [1]  2/6
cabin [1]  22/5
call [1]  17/13
can [16]  8/12 12/20
 16/4 16/9 16/10
 17/3 17/15 18/5
 18/6 20/3 21/2
 21/14 21/20 23/21
 30/23 31/9
can't [9]  5/7 5/8
 5/20 18/6 19/1 19/2
 19/5 23/4 23/23
candid [1]  21/14
candidly [1]  25/11
cannot [7]  5/3 6/8
 15/17 17/19 21/9
 21/21 23/14
case [20]  1/4 3/4
 3/5 3/22 3/25 7/4

**C**

case... [14]  9/12
13/3 13/3 17/24
19/10 19/10 19/23
20/4 22/10 22/11
29/3 29/13 30/20
30/21
case-by-case [2]
13/3 19/10
cases [5]  10/15
17/13 23/18 24/3
29/22
catch [1]  8/15
categorical [1]
19/24
categorize [1]
28/17
cattleman [2]  5/5
5/23
Cattlemen [5]  4/8
4/10 4/13 6/4 6/10
CATTLEMEN'S
[7]  1/3 3/5 3/10
15/19 17/11 24/4
25/17
caught [1]  10/4
cause [4]  10/7 10/9
13/20 32/6
caused [1]  24/14
causes [1]  25/6
causing [6]  13/15
13/17 13/17 13/20

certain [5]  15/16
16/20 16/22 17/19
19/20
certainly [1]  22/17
certified [1]  32/7
certify [1]  32/4
challenge [5]  12/4
12/14 14/25 17/14
17/14
challenged [1]
22/10
chance [1]  29/15
change [4]  5/1 12/5
14/11 24/15
changes [1]  12/5
Christina [2]  2/5
3/11
circuit [6]  24/25
29/20 30/2 30/4
30/10 30/13
circumstantial [1]
17/2
cite [1]  23/18
cited [2]  10/16 24/3
claim [2]  21/21
22/8
claims [1]  16/22
clarify [1]  20/11
clarity [1]  13/1
Clean [4]  13/4 14/2
14/4 22/6

clear [3]  20/4 25/12
25/24
clearer [1]  14/15
clearly [4]  8/21
10/4 25/25 28/8
clients [1]  22/3
close [1]  29/7
closer [1]  16/2
closest [1]  4/25
code [1]  21/19
collapses [1]  20/6
colleagues [1]  3/11
COLUMBIA [2]
2/14 3/16
come [3]  10/17
17/11 25/17
comes [3]  20/9 29/6
30/8
coming [1]  16/1
compare [2]  12/1
13/22
complaint [1]  21/18
complex [3]  13/2
21/25 22/3
complicated [1]
21/21
concern [7]  8/4
21/11 21/13 21/14
25/21 25/24 25/25
concerning [1]  7/23
conclude [2]  15/17
28/16

Case 3:19-cv-00564-AC   Document 110   Filed 10/27/20   Page 38 of 57
Case 3:23-cv-00007-GFVT   Doc #: 61-1   Filed: 08/31/23   Page: 39 of 58 - Page ID#: 2298

**C**

concluded [1]
31/18

conflating [1]  24/7

conformed [1]  32/7

confusion [1]  29/19

connection [2]  13/7
14/10

consequence [1]
22/12

consistently [1]
24/18

constitute [2]  21/5
24/9

consultant [2]
10/17 23/25

consultants [1]
10/9

consulting [3]  18/8
21/2 21/5

context [2]  22/6
22/8

contrary [2]  15/19
25/10

core [1]  4/9

Corps [4]  7/2 9/20
10/13 14/7

Corps' [1]  10/1

correct [3]  11/19
23/6 32/5

correspond [1]
11/20

cost [6]  18/8 18/8
18/13 18/21 20/24
21/17

costs [1]  21/9

could [2]  19/10
25/18

couldn't [1]  12/17

Counsel [1]  3/8

County [2]  5/11
26/9

couple [3]  6/24 9/18
22/5

course [1]  5/19

COURT [10]  1/1
1/18 2/21 9/25
22/10 25/4 31/1
31/11 31/17 32/11

Courthouse [1]
2/21

covered [4]  11/22
25/13 25/13 26/11

created [1]  23/17

Creek [14]  6/15
6/17 6/19 7/8 7/9
7/16 26/4 26/5 26/9
26/13 26/20 27/21
27/22 29/1

criteria [2]  14/14
25/12

crops [2]  6/20 7/7

crossed [1]  26/1

CRR [2]  2/21 32/10

crux [1]  25/8

CSR [2]  2/21 32/10

curable [2]  29/16
30/20

curious [1]  23/12

Curtis [1]  6/13

cv [2]  1/4 3/5

**D**

damages [1]  21/2

Daniel [2]  2/4 3/11

DATE [1]  32/10

day [4]  14/13 21/1
29/24 30/15

DC [2]  2/11 2/16

deadline [1]  31/11

deal [2]  5/20 30/6

dealing [1]  19/12

deals [1]  19/18

decide [1]  4/7

decision [3]  11/11
24/23 24/25

declarant's [1]
11/25

declaration [21]
6/13 7/4 7/16 7/19
7/21 7/24 9/6 12/2
12/21 12/22 12/23
12/25 13/13 13/13
13/23 13/25 20/2
22/19 22/20 25/19
26/16

declarations [9]

# D

declarations... [9] 11/6 11/16 12/2 13/24 14/17 15/4 15/24 17/4 25/22
deeper [2] 9/11 9/12
defendant [5] 2/14 7/2 9/9 20/15 31/6
defendants [3] 1/7 2/9 3/14
defendants' [1] 4/24
defense [1] 10/18
define [1] 11/14
defined [1] 11/21
defines [1] 11/13
definitely [1] 30/9
definition [6] 5/17 8/9 8/17 9/3 13/1 14/1
definitional [2] 11/7 11/18
definitive [1] 25/12
degree [3] 4/4 4/11 17/24
delay [1] 10/10
denied [1] 18/25
Department [3] 2/9 3/13 11/2
describe [1] 22/21
described [3] 9/5

describes [6] 6/14 6/20 8/13 11/14 26/3 26/5
describing [5] 8/1 8/6 8/16 9/2 27/8
description [1] 8/13
desires [1] 9/11
determination [3] 10/8 19/10 22/9
determinations [1] 13/3
determine [2] 10/5 19/21
dichotomy [1] 13/22
did [2] 14/13 25/2
difference [2] 11/12 20/7
different [10] 7/25 8/1 8/2 8/14 11/15 12/24 14/23 22/17 24/5 24/11
dig [2] 9/11 9/12
direct [3] 8/11 27/1 27/8
discontinuous [1] 27/3
discuss [1] 3/19
discussion [1] 19/17
dismisses [1] 31/1

dismissing [1] 30/21
distinction [4] 7/8 7/11 8/25 25/24
distinguish [2] 8/22 19/13
DISTRICT [4] 1/1 1/2 1/18 2/21
Division [1] 2/10
do [42]
Docket [1] 6/13
does [2] 6/16 6/25
doesn't [9] 8/21 10/5 11/14 12/5 12/17 18/14 21/16 22/25 28/1
doing [5] 9/10 9/14 16/23 18/8 20/23
don't [22] 8/20 13/8 13/10 15/23 15/24 16/17 17/8 20/17 21/5 21/20 21/20 21/23 25/22 25/24 27/18 29/5 29/6 29/13 29/15 29/17 30/18 30/18
done [1] 10/3
door [1] 21/23
down [2] 15/21 28/10
downgraded [1] 29/25

**D**

dozens [1]  30/16
drainage [5]  7/9
7/16 26/25 27/8
28/18
drainages [4]  6/18
7/10 8/9 22/22
draw [6]  7/15 14/14
17/3 27/7 28/14
28/22
drawn [2]  8/12
28/15
draws [5]  8/25 26/6
26/11 28/5 28/8
driven [1]  14/18
Duarte [1]  10/15
Due [1]  13/8

**E**

earlier [3]  12/1
25/11 25/21
Earth [1]  26/17
Earthjustice [2]
2/15 2/18
easily [1]  27/7
easy [1]  7/15
effect [1]  14/3
either [4]  4/5 9/23
10/4 10/4
electronic [1]  7/2
else [1]  26/14
emphasis [1]  14/16

end [4]  14/13 21/1
29/24 30/7
enforced [2]  10/14
22/23
enforcement [1]
20/14
engage [2]  5/23 9/6
engaging [2]  23/15
23/17
Engineers [1]  14/7
enjoining [1]  12/7
enough [5]  16/17
18/11 27/6 28/16
29/7
ensconced [1]
24/22
entire [1]  26/11
entirety [1]  9/13
entitled [1]  32/6
environmental [5]
1/6 2/10 3/6 14/6
14/21
ephemeral [23]  5/4
6/18 7/10 7/13 8/7
8/8 8/10 8/15 8/22
9/1 11/22 20/4 26/1
26/6 26/11 26/13
26/24 27/12 27/14
27/16 27/19 27/23
28/5
equally [1]  20/18
equipment [2]  28/9

end [1]  28/9

erased [1]  5/25
ergo [1]  13/15
establish [5]  12/9
12/10 12/14 23/21
23/22
established [3]  9/17
13/19 24/12
et [2]  1/6 3/7
even [10]  4/3 4/4
9/15 11/10 11/12
12/1 13/19 15/14
18/11 24/10
every [3]  6/21 6/24
9/18
every-couple-of-yea
rs [1]  6/24
evidence [1]  17/3
evolved [2]  29/3
29/4
ex [1]  19/4
exactly [2]  11/19
31/4
example [2]  10/15
20/14
exception [2]  6/1
9/21
exclude [2]  9/23
9/23
excluded [1]  14/18
excuse [1]  28/7
exemption [14]

**E**

exemption... [14]
5/25 7/5 10/11
10/12 15/16 15/21
16/18 16/19 17/7
20/10 20/11 20/14
21/21 22/22
Exhibit [4]  26/16
27/24 28/1 28/7
Exhibit A [4]  26/16
27/24 28/1 28/7
expect [2]  28/9
28/12
expend [1]  10/9
expensive [2]  19/21
20/22
experience [1]
10/14
explain [1]  6/25
explained [1]  3/23
explains [3]  6/16
6/23 7/4
expressed [1]  25/21
expressly [2]  11/14
25/2
extended [1]  17/6
extension [2]  13/18
24/19

**F**

face [2]  9/8 30/1
facing [1]  30/2

fact [2]  5/10 20/18
facts [6]  4/4 9/18
15/22 16/18 16/21
23/22
factual [1]  6/4
factually [1]  9/5
failing [1]  29/11
fails [1]  15/13
failure [1]  29/10
fairly [2]  12/3
24/14
familiar [1]  24/3
far [4]  13/10 20/6
26/24 30/16
farm [9]  26/8 27/12
27/17 27/21 27/22
27/22 28/2 28/9
28/12
farmed [1]  17/1
farmer [2]  5/5
28/24
farming [10]  7/1
7/5 9/24 15/16
16/18 16/18 17/5
19/17 26/10 27/13
farms [1]  28/17
favor [1]  28/15
feature [2]  19/11
19/14
features [5]  9/23
13/3 13/7 14/6
22/20

fed [3]  6/18 27/11
27/16
federal [2]  7/5
14/23
fee [1]  10/18
feed [1]  7/10
feedback [1]  7/2
feel [4]  9/15 30/13
30/13 30/18
feels [1]  23/5
fees [3]  18/8 21/2
21/5
field [6]  4/15 4/16
4/17 5/6 5/6 10/22
fighting [1]  29/19
figure [4]  18/5
21/25 22/2 22/12
file [1]  31/2
filed [2]  13/13
31/12
final [2]  14/1 24/9
find [5]  13/11 21/21
21/22 21/22 29/9
finding [3]  20/23
21/17 22/6
finger [2]  11/3
23/25
first [8]  6/4 7/21
7/24 8/18 11/5
23/16 24/25 30/23
flat [1]  28/10
flow [6]  8/4 8/14

**F**

flow... [4]  8/23 11/22 14/18 26/13
flowed [1]  27/1
flows [12]  6/15 6/15 6/17 7/13 7/14 8/10 17/22 26/6 26/7 26/11 27/8 28/5
footing [3]  18/16 19/1 19/8
forbidden [7]  6/6 9/7 9/10 9/13 10/22 20/22 20/23
forbids [3]  17/20 18/7 21/16
foregoing [1]  32/4
forth [1]  12/13
forward [2]  6/2 31/14
Foundation [1]  2/5
four [2]  3/22 4/5
four-part [2]  3/22 4/5
Francois [4]  2/4 3/10 24/6 25/10
front [1]  22/7
functionally [2]  23/3 23/6
further [4]  11/24 25/17 29/17 31/6
future [2]  30/10 30/15

**G**

gain [1]  5/19
gained [1]  6/9
generally [1]  28/14
gentleman [1]  16/23
Gentry [14]  6/14 6/17 6/19 7/8 7/9 7/16 26/4 26/5 26/9 26/13 26/20 27/21 27/22 29/1
geography [2]  19/14 20/6
get [13]  3/20 4/25 10/7 10/10 11/11 16/2 18/24 20/17 21/25 22/2 29/16 30/7 30/16
gets [1]  26/1
getting [3]  5/17 18/12 27/14
give [1]  22/13
given [3]  5/1 10/24 27/20
gives [1]  23/5
go [10]  6/1 10/6 12/12 12/24 13/25 16/3 19/5 19/20 22/11 23/24
goes [5]  8/8 11/24 18/23 18/24 19/5
going [28]  4/22

15/25 16/24 16/25 17/16 19/1 19/7 19/7 20/21 20/22 20/24 21/17 23/19 23/23 24/18 26/12 28/23 28/23 28/24 29/1 29/2 30/9 30/11 30/12 30/13
good [3]  3/9 18/18 29/15
Google [1]  26/17
got [5]  9/11 10/9 21/22 27/15 28/11
government [1]  5/18
government's [1]  23/12
grafted [1]  24/22
gravamen [1]  21/18
green [2]  26/21 28/11
groundwater [1]  14/15
growing [1]  26/25
guess [7]  5/14 7/23 8/18 28/22 28/23 29/2 30/7
guessing [1]  28/24
guesswork [1]  28/19
guidance [2]  4/1

## G

guidance... [1]
 29/18
guise [1]  30/8
gullies [4]  26/6
 26/12 28/6 28/8
gully [1]  27/19

## H

had [2]  6/4 28/21
handy [1]  7/21
Hang [1]  16/6
harm [23]  4/6 10/7
 10/20 12/19 13/6
 13/15 13/17 15/2
 15/9 15/11 15/18
 17/15 17/21 17/22
 18/17 21/6 21/7
 21/8 21/9 21/24
 22/3 22/6 29/16
harmed [1]  15/17
has [20]  4/8 5/23
 9/5 9/12 10/5 10/23
 11/8 13/11 16/20
 16/23 17/1 17/21
 22/10 23/13 24/7
 24/10 24/12 27/20
 29/3 30/8
hasn't [1]  13/19
have [41]
haven't [1]  16/21
having [5]  4/9 5/12

Hawkes [1]  22/11
he [69]
he'd [1]  18/6
he's [13]  7/10 8/16
 9/4 10/4 10/9 12/6
 18/25 19/1 26/10
 26/12 27/15 27/18
 29/1
hear [5]  4/23 16/4
 16/9 16/10 30/19
heard [2]  10/25
 15/19
hearing [2]  1/14
 31/3
help [2]  21/25 22/2
helped [1]  3/20
here [15]  3/4 3/18
 3/25 4/13 4/21 11/4
 11/17 13/18 22/6
 24/1 24/16 26/2
 29/3 29/25 30/18
here's [3]  4/7 5/8
 27/10
high [2]  18/11
 18/14
him [11]  9/7 10/7
 12/11 13/15 13/17
 13/17 13/20 21/17
 23/5 28/9 28/12
himself [1]  23/4
hire [1]  23/24

6/21 7/7 7/8 7/15
 7/19 7/21 7/24 8/19
 9/5 9/24 10/13
 11/19 12/21 12/24
 17/21 21/18 26/4
 26/7 29/11 29/12
holding [2]  29/19
 30/9
Honor [62]
HONORABLE [1]
 1/17
how [14]  4/1 5/8
 5/21 7/4 8/18 11/7
 11/8 11/10 11/12
 11/15 12/5 13/10
 27/13 29/22
hurdle [1]  30/2
hypothetical [7]
 17/16 17/18 20/19
 21/15 23/2 23/3
 24/13

## I

I'd [4]  5/14 17/11
 17/12 28/23
I'll [8]  4/10 6/3 6/10
 16/12 17/13 18/19
 21/14 30/15
I'm [23]  3/10 3/16
 4/12 4/21 10/17
 15/25 15/25 17/16
 19/4 19/7 19/7

**1**

I'm... [12] 20/21
  20/22 20/23 20/24
  23/11 28/19 28/23
  29/1 29/2 29/24
  30/7 30/12
I've [2] 25/21 27/15
i.e [1] 24/14
idea [1] 21/23
identical [1] 17/17
identify [1] 8/8
idiosyncratic [1]
  5/14
image [1] 26/17
imagine [2] 18/10
  21/1
imminence [1]
  15/11
imminent [2] 10/20
  29/8
impact [2] 9/7
  14/22
including [1] 27/23
incorporated [1]
  25/3
indicate [1] 17/5
indicated [1] 26/20
indiscernible [3]
  10/8 13/21 15/24
individual [3]
  16/19 23/18 24/11
inference [5] 7/15

28/14
inferences [2]
  28/15 28/22
information [4]
  27/7 28/4 28/13
  28/16
injunction [2] 1/14
  3/22
injury [16] 10/20
  12/3 12/3 12/9
  23/15 23/20 23/21
  23/21 23/22 23/23
  23/24 24/12 24/13
  24/13 25/8 29/7
instance [1] 15/13
insufficiently [1]
  29/4
interested [1] 31/14
interesting [1]
  29/21
intermittent [40]
intermittently [1]
  6/17
interpret [1] 7/5
interpretation [3]
  10/1 10/1 24/24
interprets [2] 7/3
  9/20
interval [3] 6/25
  9/18 9/20
intervenor [3] 2/14

invalid [1] 20/25
involving [1] 15/14
irreparability [2]
  4/6 18/17
irreparable [9]
  10/7 15/8 15/9
  15/18 17/15 21/7
  21/9 21/24 29/16
irrigating [1] 16/24
is [130]
isn't [2] 18/4 21/19
issue [10] 3/24 3/25
  5/12 10/18 14/25
  15/1 21/15 24/14
  24/15 30/20
issues [2] 3/19 11/4
it [50]
it's [26] 7/25 8/2
  10/4 12/3 12/3 13/9
  15/18 16/7 20/21
  21/9 21/13 21/21
  22/24 23/17 23/20
  24/5 24/13 24/17
  26/16 26/24 27/11
  27/22 28/10 28/19
  28/20 30/20
its [5] 4/8 11/5
  24/23 30/3 30/4
itself [2] 17/23
  23/16

## J

joined [2]  3/11 3/16
Jonathan [3]  2/9
 3/13 11/1
JUDGE [1]  1/18
jurisdiction [2]
 14/8 28/15
jurisdictional [2]
 10/8 22/9
just [16]  5/20 6/8
 10/24 16/1 18/14
 20/16 20/21 21/23
 23/11 24/5 24/12
 27/8 27/23 29/11
 29/13 31/9
Justice [3]  2/9 3/14
 11/2

## K

key [1]  24/16
kind [4]  10/6 22/3
 26/1 28/10
knocked [1]  15/20
know [21]  8/19
 8/20 9/10 13/8
 13/10 15/23 15/24
 16/18 16/22 17/8
 18/7 21/16 21/20
 25/22 26/12 27/13
 27/18 28/20 29/7
 29/15 29/23

## L

lack [1]  30/21
lacks [1]  13/1
land [7]  4/14 7/25
 8/2 14/6 17/21
 25/25 29/5
language [1]  7/23
LaPant [1]  10/15
later [5]  5/19 10/18
 12/2 13/14 17/12
latest [1]  29/23
law [5]  18/7 20/12
 21/16 21/25 22/3
laws [1]  24/2
lay [1]  29/5
layering [1]  12/18
layers [1]  12/9
least [2]  5/18 29/15
leave [2]  30/15 31/2
left [1]  29/24
legal [2]  2/5 22/12
lengthy [1]  19/21
less [1]  18/12
let [4]  9/21 15/18
 18/19 20/20
let's [7]  4/14 9/4
 10/18 12/2 18/10
 20/20 21/1
light [1]  14/24
like [10]  3/22 5/10
 9/6 13/4 17/3 17/11
 20/22 21/6 23/5

likelihood [4]  4/5
 5/20 28/6 30/5
likely [1]  26/24
limitation [1]  24/20
limited [1]  23/10
limits [1]  24/24
line [6]  26/20 26/22
 27/2 28/11 28/24
 28/25
lines [1]  14/15
little [3]  9/11 9/12
 22/17
long [1]  17/1
longer [1]  6/18
look [8]  3/25 4/7
 12/12 12/21 13/12
 15/1 26/15 26/20
looking [4]  4/12
 21/6 27/24 28/7
loses [1]  17/20
lot [4]  18/6 28/19
 29/18 30/12
low [1]  30/5
Lujan [1]  3/25

## M

made [2]  17/9
 19/11
main [2]  4/22 6/3
make [11]  9/12
 12/17 13/3 15/10
 15/10 17/24 18/11

# M

make... [4]  23/23
25/24 29/2 29/17
makes [2]  13/11
13/24
making [2]  25/9
30/5
manage [1]  13/4
manner [2]  16/20
21/6
manufacture [1]
23/15
manufacturing [1]
24/2
many [2]  14/20
24/19
Martin [19]  2/5
3/11 5/1 5/10 6/13
7/6 10/19 11/17
13/6 17/25 18/3
20/2 22/18 23/2
23/8 25/19 25/23
29/6 29/11
Martin's [4]  5/13
12/22 13/12 26/16
material [1]  11/12
matter [1]  18/16
maybe [3]  16/2
18/3 18/13
me [14]  4/15 9/21
15/10 16/4 16/9
16/10 18/19 20/20

28/7 28/22 29/7
meadow [3]  17/19
18/4 18/5
mean [5]  7/12 8/19
21/12 29/22 30/12
means [11]  5/16
7/13 7/14 8/5 8/6
8/19 8/20 11/14
25/23 25/25 29/20
mechanism [1]  4/9
meet [2]  29/10
29/12
member [3]  4/12
10/19 11/5
members [3]  4/9
14/4 15/17
merit [1]  11/11
merits [1]  30/5
met [1]  9/15
MICHAEL [1]
1/17
might [1]  30/20
millions [1]  21/19
minute [1]  20/17
moment [1]  16/1
money [7]  10/9
18/6 19/5 19/6
20/24 21/17 23/5
more [8]  7/14 12/1
14/14 25/8 25/12
26/24 27/8 27/18

most [1]  4/25
move [1]  31/14
movement [1]  6/23
moving [2]  25/7
26/22
Mr [3]  2/4 2/4 2/9
Mr. [28]  5/1 5/10
5/13 7/6 10/19
11/17 12/22 13/6
13/12 13/23 13/24
13/25 17/25 18/3
20/2 20/2 22/18
22/18 22/19 23/2
23/8 24/6 25/10
25/19 25/23 26/16
29/6 29/11
Mr. Francois [2]
24/6 25/10
Mr. Martin [16]
5/1 5/10 7/6 10/19
11/17 13/6 17/25
18/3 20/2 22/18
23/2 23/8 25/19
25/23 29/6 29/11
Mr. Martin's [4]
5/13 12/22 13/12
26/16
Mr. Rosa [2]  13/23
13/24
Mr. Rosa's [4]
13/25 20/2 22/18

# M

Mr. Rosa's... [1]
22/19
Ms [3]  2/5 2/15
2/18
much [2]  25/12
29/18
multifactor [1]
25/14
my [19]  3/11 7/4
7/11 8/18 13/7
18/19 20/18 20/19
20/19 21/11 21/13
23/2 23/3 25/21
26/9 27/5 27/10
27/10 27/12

# N

name [1]  3/8
narrow [2]  7/1 10/2
narrowly [1]  7/5
Natural [1]  2/10
navigable [17]  11/9
11/21 11/23 12/4
12/7 12/8 12/15
12/18 12/25 13/15
13/16 13/19 14/3
14/10 14/13 14/19
14/22
necessary [1]  22/5
need [3]  15/1 23/22
30/19

needs [1]  12/10
net [1]  14/21
new [6]  12/8 13/12
15/2 25/11 28/17
29/5
next [3]  4/18 19/15
28/25
nexus [6]  13/2
13/10 24/20 24/21
25/5 25/15
Ninth [5]  24/25
29/20 30/2 30/10
30/12
no [15]  1/4 3/4 6/2
6/18 13/14 13/16
13/18 16/6 18/10
20/7 21/3 23/14
28/24 31/7 31/13
No. [1]  6/13
No. 46 [1]  6/13
nobody [1]  5/23
normal [2]  7/1 9/24
North [1]  26/4
not [45]
now [12]  5/2 13/8
13/12 14/20 16/4
16/9 16/10 17/11
18/25 19/24 21/14
22/24
nuanced [1]  29/21
number [2]  14/4
16/20

Nursery [1]  10/15
NW [2]  2/11 2/16
NWPR [1]  15/15

# O

o0o [1]  32/2
objective [2]  14/14
25/12
obtains [1]  18/20
OCA [1]  14/4
October [1]  32/9
off [2]  7/11 20/17
offered [1]  9/25
Official [1]  32/11
oh [1]  23/24
Okay [3]  16/12
16/16 20/8
once [2]  14/23 25/1
one [17]  4/8 4/25
9/21 11/3 17/8
17/15 17/18 19/14
19/25 20/11 23/3
23/4 25/17 26/22
29/3 29/3 29/6
only [9]  7/13 8/10
8/11 9/9 9/21 9/22
12/3 27/1 29/6
open [1]  21/23
opinion [3]  10/10
30/3 30/4
opposed [1]  25/13
oral [1]  3/5
order [5]  7/7 9/12

# O

order... [3]  10/5
12/9 12/13
ordinary [1]  20/4
OREGON [9]  1/2
1/3 1/7 3/5 3/10 4/8
4/9 4/12 6/3
original [6]  12/21
12/22 12/25 13/23
13/25 32/6
originally [1]  13/24
Ortner [2]  2/4 3/12
other [6]  5/25 9/8
14/21 16/22 25/4
29/17
otherwise [2]  18/8
24/1
our [5]  6/25 7/6
17/9 20/12 23/18
out [14]  4/22 5/13
13/11 17/3 18/5
20/23 21/17 21/21
21/22 21/22 21/25
22/2 22/12 23/24
outcome [1]  18/22
outlined [1]  3/23
outset [1]  4/10
over [3]  24/2 27/19
27/22
own [5]  13/4 29/11
29/12 30/3 30/4

# P

p.m [2]  3/2 31/18
Pacific [1]  2/5
page [4]  15/7 15/8
15/8 15/12
pages [1]  30/16
panel [5]  30/2 30/3
30/3 30/10 30/12
paragraph [15]
6/14 6/22 7/24 8/9
12/22 12/23 12/24
14/1 22/19 26/3
26/8 26/17 27/20
28/5 28/7
paragraphs [2]
6/14 6/17
part [10]  3/22 4/5
6/8 9/9 9/22 19/18
26/21 26/22 26/25
28/1
particular [1]  5/11
parties [4]  3/21
29/18 29/21 30/16
party [1]  20/13
pay [2]  21/20 21/22
paying [2]  22/2
23/5
Pennsylvania [1]
2/11
people [3]  18/15
21/19 21/24
period [2]  17/1 17/6

permission [4]
18/12
permit [3]  5/25
18/20 18/21
permits [3]  14/5
18/7 21/16
permitting [1]  10/6
persuaded [1]
30/13
persuasive [3]  30/1
30/4 30/11
phone [1]  16/2
phrased [1]  28/21
pick [1]  17/12
picked [2]  5/23
14/20
piece [2]  5/11 8/2
place [4]  5/3 24/2
25/7 28/12
plaintiff [36]
Plaintiff B [1]
18/20
plaintiff's [1]  14/25
plaintiffs [1]  17/17
plant [1]  7/7
planting [1]  6/20
pleading [2]  31/2
31/12
please [1]  3/8
plow [10]  4/17 5/5
5/7 10/21 17/19
18/4 18/5 26/12

# P

plow... [2]  27/4 28/24
plowed [1]  6/24
plowing [11]  4/15 4/16 6/23 6/25 9/18 9/20 9/20 10/13 25/25 27/19 28/13
plows [2]  6/20 7/6
pluralities [2]  29/22 29/23
plurality [2]  11/10 11/13
point [4]  12/20 17/9 22/4 22/19
pointed [1]  5/13
pointing [1]  6/12
ponds [1]  8/15
portion [2]  5/20 27/3
Portland [2]  1/7 2/22
position [6]  4/24 15/19 15/22 17/14 23/12 28/21
possibility [1]  19/19
potential [1]  15/21
Powder [3]  6/16 26/4 26/7
practically [1]  19/6
practices [2]  7/1

precedence [1]  25/4
precedential [2]  29/19 30/9
precipitation [3]  8/11 27/2 27/9
precisely [1]  21/9
predated [1]  24/21
predicate [1]  3/24
prejudice [2]  30/22 31/1
preliminary [2]  1/14 3/21
premature [1]  15/9
presence [2]  5/3 14/15
presented [1]  16/21
previously [2]  14/6 15/3
principles [1]  25/3
prior [1]  20/12
probably [2]  4/25 29/14
problem [3]  11/7 11/18 11/25
proceedings [3]  1/16 31/18 32/5
process [4]  10/6 18/22 18/25 19/21
produces [1]  8/3
producing [1]  8/13
productive [5]  4/14

profitable [1]  18/13
prohibited [1]  4/18
prohibitive [2]  18/9 19/6
prohibits [4]  4/15 5/7 5/8 5/22
projects [1]  14/5
properties [1]  17/5
property [19]  5/11 6/15 7/8 13/4 13/8 16/20 16/24 17/1 18/21 18/23 26/5 26/7 26/9 26/21 27/4 27/11 27/12 27/13 27/17
proposition [1]  10/19
PROTECTION [18]  1/6 3/6 11/9 11/21 11/23 12/5 12/7 12/9 12/16 12/18 13/15 13/17 13/20 14/7 14/11 14/14 14/19 14/22
prove [1]  20/13
provide [1]  29/18
provided [1]  7/3
provides [1]  28/3
provision [3]  9/25 10/2 19/18
purposes [4]  10/21

P

purposes... [3]  11/9
  11/21 14/24
put [3]  11/3 12/13
  23/25

Q

qualify [2]  7/1 17/7
question [24]  4/21
  6/3 8/18 15/7 15/11
  15/14 16/19 17/12
  18/18 20/10 20/18
  20/18 20/20 23/10
  23/19 24/7 24/11
  24/17 24/22 25/18
  27/5 27/10 28/15
  30/6
questions [3]  29/14
  30/23 31/6
quickly [1]  31/9
quite [3]  18/12
  23/11 27/5

R

rain [1]  14/18
rainfall [1]  7/14
rainflow [1]  8/3
rainwater [2]  8/15
  14/16
raised [1]  4/21
ranched [1]  17/1
ranching [2]  15/16
  17/6

Rapanos [8] 11/11
  11/13 24/23 25/3
  29/20 30/10 30/14
  30/17
rather [6]  9/19 9/19
  11/14 14/16 26/24
  27/1
reaches [1]  13/10
read [5]  8/19 25/22
  26/10 30/11 30/14
reading [2]  29/23
  30/3
ready [1]  3/20
real [5]  20/19 21/15
  24/15 25/24 27/10
realize [1]  11/11
really [11]  5/16
  5/19 6/5 6/7 9/10
  11/3 15/20 27/15
  29/1 29/22 31/13
reason [1]  30/19
reasonable [1]
  28/14
reasonably [1]
  28/12
reasons [3]  4/17
  17/8 26/22
received [1]  26/6
receives [1]  28/5
recess [3]  31/8
  31/16 31/17
recognizable [1]

recognize [2]  19/13
  22/7
recollection [1]
  7/11
record [2]  3/8 32/5
recover [1]  21/2
recovered [1]  21/10
redressability [1]
  13/18
redressable [2]
  12/7 12/10
reduction [1]  18/23
reenacted [1]  25/2
reference [1]  25/9
referenced [1]  25/3
references [2]
  16/24 26/17
referencing [1]
  25/9
referred [2]  17/9
  25/11
regard [1]  20/5
regards [1]  18/16
regime [2]  24/20
  25/5
regulated [7]  6/18
  19/12 19/14 20/6
  20/10 20/13 22/21
regulation [33]
regulations [3]  4/13
  24/23 26/2

# R

regulatory [10]
5/17 6/6 9/9 9/13
14/11 21/18 24/15
25/4 25/6 25/8
relevant [1] 24/1
relieve [1] 12/11
remember [1] 12/2
repealed [1] 25/1
REPORTER [2]
2/21 32/11
required [1] 14/4
requirement [1]
22/11
requirements [1]
29/10
requires [1] 4/11
requiring [1] 30/10
Resources [1] 2/10
respect [3] 12/15
19/9 24/2
respects [1] 24/19
response [6] 7/14
8/11 8/11 10/24
27/2 27/9
restricts [1] 18/21
result [1] 15/17
results [1] 6/23
riddled [1] 13/1
right [16] 8/2 8/7
9/4 12/24 16/12
16/14 16/16 17/25
23/1 23/6 25/16
28/21 28/24
rights [1] 16/25
riparian [3] 6/19
26/9 27/21
ripe [1] 22/9
risk [1] 10/13
River [2] 6/16 26/7
RIVERKEEPER
[2] 2/15 3/16
RMR [2] 2/21
32/10
Robertson [3]
29/24 30/11 30/14
Rockies [2] 3/24
29/12
Room [1] 2/22
Rosa [2] 13/23
13/24
Rosa's [4] 13/25
20/2 22/18 22/19
roughly [1] 6/20
routinely [1] 10/3
rule [31] 8/10 8/17
9/3 11/10 11/21
11/23 12/5 12/7
12/9 12/14 12/16
12/18 13/8 13/15
13/17 13/20 14/1
14/3 14/11 14/14
14/19 14/22 19/10
24/19 24/22 25/1
25/11 28/17
rules [1] 25/2
rulings [1] 29/17
running [1] 28/11

# S

S.W [1] 2/22
Sackett [1] 22/10
Sacramento [1] 2/6
said [4] 17/12 22/10
27/15 27/20
same [11] 4/4 7/12
8/9 10/6 15/10
18/15 18/25 19/8
23/3 23/6 29/14
satisfy [1] 22/13
save [1] 30/16
say [13] 4/10 4/13
4/15 5/5 5/14 7/8
17/2 19/2 21/19
23/23 26/10 27/10
29/2
saying [6] 6/5 20/24
25/6 27/21 27/22
30/7
says [13] 5/10 7/25
8/3 12/25 18/4 19/5
20/21 26/8 26/19
26/19 27/20 28/5
30/14
scheme [1] 21/18

S

scope [1]  8/17
seasonal [1]  8/3
Seattle [1]  2/19
second [5]  7/19 9/5
9/6 16/6 19/18
Section [2]  9/25
14/5
see [5]  10/3 22/15
26/3 26/21 27/2
seek [1]  14/4
seeking [1]  3/21
seems [2]  11/20
16/25
sentence [2]  15/12
15/13
separate [1]  17/12
set [3]  4/22 29/3
31/11
sets [1]  12/23
several [1]  3/19
Sewell [2]  2/15 3/15
shot [1]  29/15
should [2]  14/1
30/14
show [9]  4/4 5/19
5/21 7/10 9/18
17/16 22/20 22/23
22/25
showing [4]  4/10
6/8 18/10 24/12
Shumway [3]  2/21

signature [2]  32/7
32/7
significant [9]  11/4
13/2 13/10 14/3
24/20 24/21 25/5
25/14 30/2
significantly [1]
14/23
signing [1]  32/4
similar [3]  13/14
13/22 14/9
similarly [1]  7/12
simply [3]  7/6 17/8
29/2
since [1]  16/23
sitting [1]  21/24
situation [1]  22/17
so [56]
soil [1]  6/24
some [13]  4/1 4/3
4/4 4/11 5/2 5/25
7/3 17/24 18/3 26/1
28/4 29/14 29/16
somebody [1]  21/22
someone [6]  6/5
16/7 17/18 18/4
20/22 23/12
something [9]  5/10
8/7 10/21 12/8
13/16 13/18 17/3
26/5 26/14

17/22 18/2 21/13
28/20 30/20
speak [2]  16/13
17/3
speaking [1]  19/7
speaks [1]  12/22
Spear [1]  22/13
specific [1]  18/10
specifically [1]
12/20
specificity [3]  4/11
6/4 12/13
spend [1]  18/6
spending [2]  19/5
19/6
spot [1]  24/1
spring [2]  4/18 4/18
springs [3]  8/4 8/14
8/22
standing [36]
start [5]  4/3 6/10
6/12 10/18 10/18
state [4]  3/8 14/21
14/24 23/22
statement [5]  5/15
9/6 13/14 13/25
20/12
statements [2]  8/20
29/11
STATES [7]  1/1
1/6 1/18 2/21 3/6

## S

STATES... [2]  14/2
15/15
statute [1]  17/23
step [1]  9/21
still [2]  29/24 30/1
stop [3]  15/25 16/1
20/16
stopping [1]  12/10
store [1]  8/15
stream [14]  5/4 5/4
5/6 5/12 8/4 8/14
8/23 9/8 26/1 27/11
27/15 27/16 27/19
28/25
streams [4]  27/12
27/14 27/16 27/23
Street [2]  2/6 2/16
strength [1]  4/8
structure [1]  9/14
subject [6]  12/6
13/4 14/6 15/3
15/15 30/5
subsequently [1]
22/11
success [4]  4/6 5/20
18/11 30/5
such [1]  6/9
sue [4]  19/2 19/7
20/24 23/6
sufficient [2]  13/1
24/9

suggest [2]  15/12
17/7
suggests [1]  5/18
Suite [3]  2/11 2/16
2/19
summer [1]  4/18
superficial [1]  5/24
supplemental [5]
6/12 13/13 13/23
25/18 26/16
supports [1]  26/23
Supreme [2]  22/10
25/4
sure [3]  5/15 18/4
18/24

## T

take [6]  4/14 5/3
9/21 14/3 17/14
20/20
taken [4]  5/22 6/7
8/20 24/8
taking [1]  5/15
talking [3]  16/7
19/4 21/15
talks [1]  5/11
tax [1]  21/19
tell [2]  20/3 28/1
tells [1]  29/7
term [5]  8/16 11/8
11/13 11/15 11/19
terms [3]  6/5 7/12
25/12

terrain [2]  22/20
28/10
test [8]  3/22 4/5
13/2 13/10 22/13
25/14 29/12 29/23
testimony [1]  7/3
text [1]  15/13
than [9]  7/14 9/19
9/19 14/16 16/22
26/24 27/1 27/8
29/18
Thank [14]  3/12
3/18 6/11 11/1 15/6
23/9 25/16 30/25
31/4 31/5 31/7 31/8
31/15 31/16
that [231]
that's [35]
their [7]  10/10 20/1
22/23 22/24 23/20
24/12 29/21
them [9]  8/24 13/9
15/2 15/2 20/7
21/22 22/1 25/6
29/16
themselves [1]  25/1
then [19]  4/23 6/15
8/6 9/8 18/22 18/25
19/14 21/11 23/18
23/22 24/25 26/5
26/8 26/12 27/13
27/24 28/6 28/23

**1**

then... [1] 30/1
theory [1] 21/3
there [28] 3/18 8/3
10/21 11/6 13/14
14/9 14/9 15/25
16/1 16/2 16/18
16/22 16/23 19/10
19/19 19/24 20/16
24/7 24/7 24/10
25/24 26/21 26/25
27/7 28/8 28/9
28/13 28/16
there's [17] 4/14
5/6 11/12 11/18
12/8 13/9 13/16
13/18 13/22 18/10
19/13 20/7 23/10
27/6 28/16 29/18
30/18
thereafter [1] 24/25
therefore [4] 10/23
17/20 19/6 28/25
therein [1] 24/24
these [6] 9/23 13/7
15/21 15/24 17/4
17/5
they [21] 6/5 7/12
12/17 15/3 16/21
17/4 17/7 20/3
21/20 21/20 22/21
22/23 23/21 23/21

25/1 25/2 25/6 25/7
they're [6] 11/7
12/4 15/20 17/17
23/23 25/9
they've [2] 15/20
21/22
thing [4] 4/17 5/7
20/11 28/20
things [6] 7/12
11/15 14/21 19/13
20/1 22/5
think [21] 4/1 4/7
4/11 4/20 4/22 8/12
9/17 11/24 12/16
17/17 20/5 22/5
22/17 22/24 23/8
24/6 25/10 26/23
28/13 28/20 29/14
third [3] 2/19 2/22
22/20
this [37]
those [12] 6/16 7/11
11/15 12/17 13/4
14/17 14/20 15/3
18/15 21/9 21/23
29/14
though [4] 4/3 8/24
27/5 28/4
thought [1] 20/1
through [11] 10/6
16/2 18/22 18/25

26/13 26/14 27/4
29/21
Throughout [1]
17/12
tied [3] 14/15 14/23
16/19
time [5] 10/9 17/2
17/6 18/20 25/17
today [5] 3/4 3/11
3/16 3/19 15/20
today's [1] 31/3
together [3] 8/20
14/24 25/22
ton [4] 19/5 19/6
20/24 23/5
Tony [1] 3/9
too [2] 20/21 21/21
top [1] 7/11
traceable [2] 12/3
24/14
track [2] 20/17
29/21
traditional [1] 3/22
transcript [3] 1/16
32/5 32/6
tree [4] 26/20 26/21
27/2 28/11
trees [3] 26/25
28/25 28/25
tributaries [3] 9/2
19/20 19/25

# T

tributary [3]  7/7
 7/17 26/4
true [1]  21/19
try [2]  16/12 30/22
trying [1]  12/4
turn [1]  25/18
two [10]  6/16 6/21
 7/11 8/19 10/3 11/3
 17/16 18/15 19/13
 25/22

# U

U.S [1]  14/7
ultimately [3]
 14/20 23/2 24/19
ultra [1]  17/22
unable [1]  23/4
uncertainty [2]
 25/6 25/8
under [8]  4/5 4/5
 9/2 14/2 15/15 19/9
 19/19 21/3
understand [1]
 23/9
undertake [1]  15/2
underwater [1]
 16/8
UNITED [7]  1/1
 1/6 1/18 2/21 3/6
 14/2 15/15
unlawful [3]  4/16

unprofitable [1]
 18/13
up [10]  4/4 5/23
 7/24 12/23 14/20
 16/13 17/12 22/7
 28/9 28/24
uplands [1]  28/7
us [2]  3/20 16/22
use [9]  4/14 5/13
 11/19 13/2 14/14
 17/16 17/20 18/21
 18/23
used [1]  17/5
uses [4]  8/6 8/16
 8/21 8/24
using [3]  11/7 16/20
 28/12

# V

variation [1]  24/20
variety [1]  4/16
various [1]  29/21
versus [1]  3/6
very [4]  16/2 17/1
 17/4 25/10
Videoconference
 [1]  1/15
view [3]  17/17
 18/15 23/1
views [1]  23/4
vires [1]  17/23
virtue [5]  5/3 21/24

# W

WA [1]  2/19
want [17]  4/3 4/14
 4/17 5/5 5/7 6/5 6/8
 15/7 17/24 20/11
 20/16 20/17 21/23
 23/24 25/17 27/13
 29/17
wanted [1]  30/15
wants [8]  5/23 9/14
 10/21 17/18 18/4
 18/7 21/16 28/2
was [11]  8/1 13/6
 13/7 13/7 13/13
 14/14 19/10 19/11
 19/12 19/19 25/14
Washington [2]
 2/11 2/16
water [10]  13/3
 13/5 14/2 14/4
 15/14 16/24 16/25
 19/11 19/14 22/6
waters [21]  11/9
 11/21 11/23 12/5
 12/7 12/8 12/16
 12/18 12/25 13/15
 13/16 13/20 14/1
 14/3 14/5 14/10
 14/13 14/17 14/19
 14/20 14/22
way [7]  7/2 8/21

# W

way... [5]  8/24
 20/20 26/1 27/14
 30/14
ways [4]  5/24 10/3
 17/15 18/3
we [44]
we'd [1]  30/6
we'll [3]  22/7 31/8
 31/16
we're [8]  3/4 5/15
 11/11 21/3 21/14
 22/24 24/6 25/7
we've [3]  9/17 9/25
 10/15
well [13]  7/23 8/8
 8/18 9/17 15/23
 16/2 21/8 22/4 28/3
 28/19 29/15 29/16
 30/6
were [6]  12/13
 14/15 16/23 22/23
 27/1 28/23
weren't [1]  15/3
what [41]
what's [5]  5/12
 10/24 15/22 20/3
 20/4
when [11]  6/15 8/6
 8/16 12/1 12/1
 18/20 20/9 25/2
 25/22 27/20 30/7

where [8]  4/13/24
 22/9 22/24 25/7
 28/8 28/10 28/12
 28/20
whether [31]  5/16
 9/10 10/10 11/12
 13/3 15/1 15/14
 16/19 18/5 18/6
 18/7 19/11 19/21
 20/5 20/6 20/9
 20/10 20/23 21/16
 21/20 21/25 22/2
 22/8 23/12 23/19
 24/7 24/11 24/22
 26/12 27/13 27/18
which [26]  4/9 5/24
 6/13 6/15 6/18 6/19
 7/2 7/4 7/25 8/5
 9/21 11/5 11/19
 11/22 14/16 18/22
 23/2 23/17 25/2
 25/8 27/15 27/23
 28/1 28/23 30/14
 31/12
who [9]  4/13 16/7
 17/18 18/4 18/24
 20/22 29/6 29/7
 30/3
whole [4]  5/15 5/22
 6/7 27/22
whose [2]  10/20
 21/15

why [3]  17/9 22/2
 26/10
Wild [2]  3/23 29/12
will [5]  4/13 14/4
 20/23 28/15 31/11
wins [1]  21/2
Winter [2]  3/23
 29/12
Winter/Alliance [1]
 29/12
within [5]  6/19 6/24
 7/7 8/16 31/11
without [5]  19/5
 23/4 30/21 31/1
 32/6
word [4]  5/14 8/7
 8/21 25/23
work [1]  26/2
working [1]  28/9
worms [1]  21/14
worried [2]  27/18
 29/1
worse [1]  16/14
worst [1]  29/25
worth [1]  4/25
would [48]
wouldn't [4]  26/2
 26/10 26/12 28/21

# Y

year [2]  10/3 10/3
years [4]  6/21 6/24
 9/19 16/21

# Y

**Yes [6]**  18/1 19/3
19/9 25/20 31/4
31/10
**you [69]**
**you'd [2]**  5/5 15/10
**you'll [1]**  31/14
**you're [6]**  11/19
16/1 20/14 25/9
28/22 31/13
**you've [7]**  6/9 9/11
9/15 10/24 11/3
15/19 28/11
**your [76]**

# Z

**zone [3]**  6/19 26/9
27/21