UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| COMMONWEALTH OF KENTUCKY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES ENVIRONMENTAL ) <br> PROTECTION AGENCY, *et al.*, ) <br> ) <br> Defendants. ) | Civil No. 3:23-cv-00007-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

One way to think about the doctrine of standing is that it keeps Courts from too quickly evaluating public policy. It is our duty to say what the law is but only when controversies have ripened so we can do our job well. Now before the Court are the Plaintiffs' Motions for an Emergency Injunction pending appeal. [R. 52; R. 53.] The challenge here by the Commonwealth and various business groups is to an administrative rule changing the definition of "waters of the United States." [*See* R. 1.] The Court denied an effort to preliminarily enjoin the enforcement of the Rule. [R. 51.] In this Court's judgment, the Plaintiffs have not provided enough support to find that the claims are ripe. Simply put, the Plaintiffs lack standing. Without standing, the Court has no jurisdiction and consequently dismissed the action.

The Plaintiffs appealed. [R. 60; R. 61.] Now, the Plaintiffs seek an emergency injunction pending appeal. For the reasons below, the Motions **[R. 52; R. 53]** are **DENIED**.

**I**

The EPA and Army Corps of Engineers promulgated a Rule redefining "waters of the United States" for the purpose of enforcing the Clean Water Act. [R. 1-1.] It became effective

on March 20, 2023. *Id.* at 2. The Plaintiffs claim that the Rule violates the Clean Water Act, Administrative Procedure Act, and United States Constitution. [*See* R. 1.]

The Court denied the Plaintiffs' Motions to preliminarily enjoin the Agencies from enforcing the Rule. [R. 51.] It found that the Plaintiffs are unlikely to succeed on the merits because their claims are not ripe. *Id.* at 7-20. Specifically, it ruled that the Plaintiffs failed to establish that the injuries allegedly caused by the Rule are "certainly impending." *Id.* It made clear that its ruling "is not to say that the Plaintiffs would never have standing to litigate the questions they present." *Id.* at 20. "[C]ertain developments, pleadings, or allegations could ripen this matter into a controversy fit for judicial review." *Id.*

The Plaintiffs staunchly disagree. They now seek an emergency injunction pending appeal. [R. 52; R. 53.] They have also filed these motions in their appeal before the Sixth Circuit. The Sixth Circuit entered an administrative stay, preventing the agencies from enforcing the Rule until May 10. [R. 64.] The Court must still resolve the emergency injunction motions pending before it. These motions relitigate the parties' original arguments and claim that they are entitled to an injunction, which this Court already denied, while their appeal of that denial is pending. *Id.*

**II**

The Plaintiffs bring their emergency injunction motions under Federal Rule of Civil Procedure 62(d). That Rule allows district courts to "suspend, modify, restore, or grant an injunction" "while an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify the injunction." Fed. R. Civ. P. 62(d). Though the Plaintiffs have already appealed, Federal Rule of Appellate Procedure 8(a)(1)(C) requires them to first seek this relief in this Court. That Rule states that "a party must

ordinarily move first in the district court" for "an order . . . granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1)(C).

As an initial matter, this case's procedural posture leads to a peculiar application of Rules 8 and 62. Motions under these Rules typically ask the district court to stay an injunction it *granted* while an appeal of the order granting the injunction is pending. *See, e.g.*, *Planned Parenthood Great Nw. Haw., Ala., Ind., and Ky., Inc. v. Cameron*, 2022 WL 1698085, at *4 (W.D. Ky. May 26, 2022). The Plaintiffs' desired relief—granting an injunction pending appeal of an order *denying* that same injunction—is effectively a motion to reconsider and is likely not the intent of the Rules. Wright & Miller suggests the same, framing a motion under Appellate Rule 8 as a "stay of the lower federal court's action." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3954 (5th ed. 2023). Nevertheless, the text of the Rule does allow the Court to "grant" an injunction pending appeal of an order that "refuses" an injunction. Fed. R. Civ. P. 62(d).

Assuming that the Motions are procedurally correct, they are unsuccessful. In resolving a motion for stay pending appeal, the Court considers the same factors it considered in resolving the preliminary injunction motions: "(1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed by the stay; and (4) the public interest in the stay." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (citing *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006)). The Court denied the original Motions for Preliminary Injunction on the first factor because no plaintiff sufficiently established a certainly impending injury, making their claims unripe. [R. 51.] Neither Motion for Emergency Injunction cures this infirmity.

3

**A**

The Commonwealth contends that the Court's denial of the preliminary injunction is "egregiously wrong." [R. 52 at 1.] In support, it repeats many arguments the Court has already addressed and rejected.

**1**

The Commonwealth first relies on its sovereignty, claiming that "the standing analysis should write itself: Kentucky has a sovereign interest in regulating waters within its borders. The Final Rule infringes on that sovereign interest by expanding federal jurisdiction over waters that Kentucky had previously regulated exclusively." [R. 52 at 4.] It believes that the standing analysis is so clear because "the Agencies acknowledge that the Final Rule gives them jurisdiction over *new waters* in Kentucky." *Id.* at 3. The Rule's economic analysis concluded that it "would not change current implementation sufficiently to quantifiably alter overall costs to the regulated public or States . . . ." [R. 31-5 at 13.] It anticipated a "slight and unquantifiable" increase in jurisdiction which it described as "*de minimis*." *Id.* at 12. At the preliminary injunction hearing, the Defendants emphasized that the Rule's impact will be "slight and unquantifiable." [R. 45 at 7.]

The Commonwealth argues that these representations constitute an acknowledgment that there are waters in Kentucky which are newly jurisdictional. [R. 52 at 3-4.] This is a conclusory assertion which is unsupported beyond the Agencies' representations. And those representations alone are insufficient. "Plaintiffs bear the burden of establishing standing, and they must support each element 'in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of the litigation.'" *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014) (quoting *Lujan*,

504 U.S. at 561). The Agencies' statement that the Rule causes a "slight and unquantifiable" increase in jurisdiction does not satisfy this burden. [R. 45 at 7.]

Compare this admission to that in cases—both of which the Commonwealth relies on in support—resolving challenges to the 2015 Rule. The EPA recognized that the 2015 Rule would increase jurisdictional waters by 2.84 to 4.65 percent. *See North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1059 (D. N.D. 2015); *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1367 (S.D. Ga. 2018). Numerous courts found this acknowledgment sufficient to establish a certainly impending injury to states' sovereignty. *See id.* Here, the Agencies' representation that the Rule will cause a "slight and unquantifiable" change does not acknowledge a similarly clear injury to state sovereignty. [R. 45 at 7.] This is not an instance, as the Commonwealth contends, "when an agency action is so broad that its impact on the State is obvious or virtually certain." [R. 52 at 7 (quoting *Kentucky v. Biden*, 23 F.4th 585, 594 n.7, 595) (quotation marks omitted).] Thus, the Commonwealth does not establish that the perceived injury to its sovereignty is *certainly* impending.

The Commonwealth also invokes the "special solicitude" theory of state standing expressed in *Massachusetts v. EPA*. [R. 52 at 6-7.] There, the Supreme Court held that the states' "well-founded desire to preserve [their] sovereign territory" can constitute an injury. *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). But that case did not relax the standing requirements. *Arizona v. Biden*, 40 F.4th 375, 385-86 (6th Cir. 2022). While it created new theories of injury for states, it did not "allow them to bypass proof of injury in particular or Article III in general." *Id.* at 386. The states' special solicitude does not, and cannot, rescue the Commonwealth's failure to establish a certainly impending injury to its sovereignty.

5

The Court's ruling does not, as the Commonwealth claims, "conclud[e] that federal infringement on Kentucky's sovereignty is not an injury-in-fact." [R. 52 at 4.] Rather, it found that the Commonwealth failed to show that such an infringement was certainly impending. The Commonwealth does not mend this weakness in its emergency injunction motion. Ultimately, the Court disagrees with the Commonwealth's belief that "it is obvious and virtually certain that at least some waters Kentucky had previously regulated exclusively will not be under federal control." [R. 52 at 8 (quotation marks omitted).] Like its Motion for Preliminary Injunction, the Commonwealth's emergency motion fails to establish a certainly impending injury to its sovereignty.

2

Second, the Commonwealth claims it faces injury as a regulator. The Court previously rejected this argument because the Commonwealth only alleged vague, speculative costs it would incur in incorporating the Rule into its regulatory scheme. [R. 51 at 17-19.] The Commonwealth now states that it will face "significant start up costs" in "inspecting and surveying" the waters within the state and incur costs in "state employee time and resources" used to implement the Rule. [R. 52 at 9-10.] It repeats its argument that its "standing as a regulator is therefore self-evident." [R. 52 at 8.] The Court still disagrees.

The Court recognizes, as it did in its prior Order, that compliance costs can constitute an injury-in-fact. [R. 51 at 17 (citing *Commonwealth v. Biden*, 57 F.4th 545, 556 (6th Cir. 2022)).] However, the Commonwealth's speculative claims that it will suffer compliance costs are insufficient to establish a certainly impending injury. It states that these costs are "obviously significant." [R. 52 at 10.] The significance of these costs is not obvious to the Court. Article III requires more than a claim that an injury is "obvious" to invoke jurisdiction in federal court.

The Court also agrees with the Commonwealth that it need not "predict exact dollar figures" to establish a certainly impending injury. [R. 52 at 10.] The Commonwealth compares its claimed compliance costs with those in *Yellen*. *Kentucky v. Yellen*, 54 F.4th 325, 342 (6th Cir. 2022). There, Tennessee established injury-in-fact by "submit[ing] uncontroverted evidence" of compliance costs." *Id.* The Commonwealth's declaration in this matter is not comparably specific. It states that a jurisdictional assessment "will require significant time and resources" and that it will "*likely* need to hire additional manpower or divert already-limited time and resources . . . ."[1] [R. 5-3 at 4-5 (emphasis added).] These conclusory and speculative assertions are less substantial than Tennessee's in *Yellen*. *Commonwealth v. Yellen*, 3:21-cv-00017-GFVT, [R. 25-3 at 5-6] (June 23, 2021). For example, Tennessee identified specific employees who would need to divert time and resources to comply with a regulation. *Id.* The Commonwealth's "likely" need to hire more individuals and divert resources is not comparable and is too speculative to be considered "certainly impending."

**3**

Finally, the Commonwealth attempts to invoke standing as a landowner subject to expanded jurisdiction. [R. 52 at 11-13.] The Court previously rejected this argument because, like the private-sector plaintiffs, the Commonwealth's fear that its waters are newly jurisdictional was too speculative. [R. 51 at 16-17.] The Commonwealth repeats its arguments that the Rule is directed at it in particular and exposes it to strong sanctions. [R. 52 at 11-13.] This argument still does not persuade the Court.

---

[1] The Commonwealth's sole declaration is from John Horne, who is currently the Executive Director of the Office of Rate Intervention in the Kentucky Attorney General's Office. [R. 5-3 at 1.] He previously served as General Counsel for Kentucky's Energy and Environment Cabinet but has not worked in that role since December of 2019. *Id.* at 2. The declaration in *Yellen* was submitted by the acting Commissioner of Finance and Administration. Eley Declaration at 5-6, *Kentucky v. Yellen*, No. 3:21-cv-00017-GFVT, (E.D. Ky. June 23, 2021), ECF No. 25-3. It is not clear why the Cabinet's current general counsel did not submit a declaration outlining the costs of complying with the Rule, which that individual, not Mr. Horne, will oversee.

7

The Commonwealth again claims that its standing as a landowner is "self-evident" and claims that the Rule is "directed at [it] in particular" because it is a landowner and developer. *Id.* at 11. Merely owning land that contains a water feature does not make the Rule's "slight and unquantifiable" expansion of jurisdiction impose a certainly impending injury. This theory would lead to an exceptionally broad standing inquiry, as any landowner would have standing to sue regardless of the Rule's applicability to them.

Further, like its claim of injury to its sovereignty, the Commonwealth does not establish that the Rule impermissibly expands jurisdiction onto waters it owns. It claims that the Court "misapplie[d] *Biden*" in determining that it failed to establish injury as a landowner. *Id.* at 12. In *Biden*, the Commonwealth had standing without identifying particular contracts because it "showed that it possessed a plethora of contracts" and that the mandate was broad enough to "obviously" apply to these contracts. *Id.* at 12-13 (quoting *Kentucky v. Biden*, 23 F.4th at 594 n.7).

Here, it is not "obvious" that the Rule will expand jurisdiction over waters on land which Kentucky owns. *Id.* The only *evidence* of an expansion in jurisdiction is the Defendants' recognition that there will be a "slight and unquantifiable" expansion. [R. 45 at 7.] The Commonwealth vehemently disagrees with the assessment that the expansion will be slight. But without a demonstration of the expansion beyond unsubstantiated allegations, the Commonwealth still fails to identify a certainly impending injury as a landowner.

### B

The private-sector plaintiffs similarly fail to show that their claims are ripe and therefore likely to succeed on the merits. The private-sector plaintiffs frame the Court's ruling as "reason[ing] that [they] do not face certain and imminent injury until they or the Agencies

definitively determine there are jurisdictional waters on their property." [R. 53 at 2.] This misunderstands the ruling. The Court made clear that, to establish ripeness, the private-sector plaintiffs would only need to establish a certainly impending injury, which is not as limited as their framing suggests. [R. 51 at 20.] Their emergency injunction motion still fails to do so.

The private-sector plaintiffs' motion exhibits the same deficiencies as the Commonwealth's. The Court recognizes that compliance costs can constitute an injury but found, and still finds, that the private-sector plaintiffs fail to show that any member's incursion of such costs is certainly impending. [*See* R. 51 at 10-15.]

The private-sector plaintiffs claim that they face a certainly impending injury because they need to immediately reassess whether any ongoing or planned activities affecting water are newly jurisdictional. [R. 53 at 5.] As the Court explained previously, the cost of determining whether action must be taken to comply with a regulation is not the same as the actual cost of complying. The latter is the form of compliance costs which the cases contemplate as an injury-in-fact; the former is not. *See Commonwealth v. Biden*, 57 F.4th at 556. The Rule itself does not require the members to conduct jurisdictional assessments. Rather, the members choose to do so to preempt a compliance letter from the EPA. [*See* R. 53 at 6.] And crucially, the compliance letter is a step between the Rule's enactment and it requiring concrete action by the landowner. This is not to say that the private-sector plaintiffs' claims would not be ripe until the EPA issues such a letter. The Court recognizes, as it did before, that costs incurred in actually complying with a regulation can constitute an injury. [R. 51 at 13-15.] But the private-sector plaintiffs do not establish that their members face certainly impending compliance costs.

The private-sector plaintiffs invoke *Am. Petroleum Inst. v. Johnson*, in which the D.C. District Court found that the API and Marathon had standing to challenge an earlier Rule

9

changing the definition of "waters of the United States." 541 F. Supp. 2d 165, 173 (D.D.C. 2008). But there, the Plaintiffs alleged that they would have to pay "millions of dollars" in compliance costs, they had *already* developed compliance plans for newly jurisdictional facilities, and their declarations identified affected waters. *Id.* at 173-75. As set forth in the Court's prior Order, the private-sector plaintiffs' declarations were not similarly specific. [R. 51 at 10-15.]

They also reference the D.C. District Court's recognition that the Rule's unquestioned impact on their "business decisions" conferred standing. [R. 53 at 7.] But in *API*, the plaintiffs' declarations "established" this impact and the agencies did not deny it. *Johnson*, 541 F. Supp. 2d at 177. In contrast, the private-sector plaintiffs' members' declarations establish only speculation and the agencies do not admit an impact on their business decisions. [*See* R. 57 at 16 ("It is entirely conceivable that the Rule may not have an impact on any of plaintiffs' members' compliance requirements under the CWA.").] Further, as oil producers, the *API* Plaintiffs were challenging a particular provision of the CWA that "directly regulate[d]" them. *API*, 541 F. Supp. 2d at 176. As the Court has already explained, the Rule does not "directly regulate" the members of the private-sector plaintiffs simply because they own land containing a water feature. [R. 51 at 12.]

The private-sector plaintiffs also invoke *Monsanto* and *Yellen*. [R. 53 at 7-8.] The parties in both cases alleged more specific compliance costs than any member of the private-sector plaintiffs. In *Yellen*, compliance costs facing Tennessee conferred jurisdiction when the state "submitted uncontroverted evidence of those costs." 54 F.4th at 342. That evidence included specific compliance costs: identifying particular employees who would need to divert time and resources and expending additional resources to alter Tennessee's baseline tax revenue.

Eley Declaration at 5-6, *Kentucky v. Yellen*, No. 3:21-cv-00017-GFVT, (E.D. Ky. June 23, 2021), ECF No. 25-3. The plaintiffs' claimed injuries in *Monsanto Co. v. Geerston Seed Farms* were similarly specific and, notably, "established" to a "reasonable probability." 561 U.S. 139, 153-54 (2010).

Finally, the private-sector plaintiffs argue that their claims are ripe because they raise a facial APA challenge. [R. 53 at 9-10.] The D.C. Circuit has observed that purely legal questions are "presumptively reviewable." *See Nat'l Min. Ass'n v. Fowler*, 324 F.3d 752, 757 (D.C. Cir. 2003) (quoting *Am. Petroleum Inst. v. EPA*, 906 F.2d 729, 739 (D.C. Cir. 1990)). But the claim must still be ripe. *See id.* at 377-78 (proceeding to a ripeness analysis). As the Court has explained, the private-sector plaintiffs fail to establish a certainly impending injury.

## C

The Commonwealth and private-sector plaintiffs both also raise the Court's *sua sponte* dismissal of the action. [R. 52 at 3 n.2; R. 53 at 4.] They invoke the Sixth Circuit's guidance that a court must provide notice before dismissing a complaint *sua sponte*, even when dismissal is without prejudice. *Id.* (both citing *Chase Bank USA, NA v. City of Cleveland*, 695 F.3d 548, 558 (6th Cir. 2012)). Courts can dismiss actions *sua sponte* for want of subject matter jurisdiction "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

In contrast, the Sixth Circuit has held that district courts do not violate this principle "where a district court properly concludes it is without subject matter jurisdiction." *Keeran v. Office of Pers. Mgmt.*, 827 F.2d 770 (Table), 1987 WL 44548, at *1 (6th Cir. Aug. 26, 1987). This is consistent with Rule 12(h)(3)'s advisement that "if the court determines at any time that it

lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Perhaps more important, this is consistent with the Supreme Court's guidance that "when [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)).

In light of this apparent conflict, the Court recognizes that the Plaintiffs should have been afforded notice and an opportunity to be heard. The Second Circuit directly addressed the issue and, after recognizing that standing is the "threshold question in every federal case," stated that "it is generally good practice, nevertheless, for courts to give a party an opportunity to oppose a contemplated *sua sponte* dismissal." *In re Indu Craft, Inc.*, 630 Fed. App'x 27, 28-29 (2d Cir. 2015). The Court agrees that "unmistakable" notice of its intent to dismiss *sua sponte* and an opportunity to respond would have been best practices. *See Doe v. Oberlin College*, 60 F.4th 345, 352 (6th Cir. 2023) (the defendant raising an issue did not constitute an "umistakable" signal from the district court that it was considering *sua sponte* dismissal).

Nevertheless, there is no apparent procedural mechanism through which the Court could vacate the portion of its order dismissing the case. The Plaintiffs have appealed, so this Court only retains jurisdiction "to proceed with matters that are in the aid of the appeal." *Lewis v. Alexander*, 987 F.3d 392, 394 (6th Cir. 1993) (quoting *Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1981)). Resolving the pending motions for emergency injunction pending appeal is certainly "in the aid of the appeal." *Id.* But although the Plaintiffs raise the dismissal issue in their motions, resolving those motions does not provide a mechanism to alter the Court's dismissal. The dismissal is now properly an issue before the Sixth Circuit. [*See* R. 60; R. 61.]

12

## III

Ultimately, the Plaintiffs are not entitled to an emergency injunction because their claims are not ripe, so they lack standing and are unlikely to succeed on the merits. To be clear, the Court's ruling is not, and never has been, that the Plaintiffs will never have standing. It is simply that they fail to establish that the "controversy" has matured to a point where jurisdiction exists.

During the pandemic era, Courts were anxious to find standing and then quickly move to the merits. But the Constitution still requires limits. The ripeness limitation ensures that the dispute constitutes a controversy and requires more than a state, organization, or individual's mere distaste for an action by the federal government. Here, the Plaintiffs fail to establish a certainly impending injury, so their claims are not *yet* controversies and do not confer federal jurisdiction. Without ripe claims, they are unlikely to succeed on the merits and are not entitled to an emergency injunction. Accordingly, and the Court being sufficiently advised, the Plaintiffs' Motions for Emergency Injunction pending appeal **[R. 52; R. 53]** are **DENIED.**

This, the 9th day of May, 2023.

Gregory F. Van Tatenhove
United States District Judge